**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TIFFANY TOTH, GEMMA LEE, JESSA HINTON, BROOKE TAYLOR, JESSE GOLDEN, LINA POSADA, SHEENA LEE WEBER, HEATHER RAE YOUNG, RACHEL KOREN, SABELLA SHAKE, and URSULA MAYES, | Case No. _____ |
| Plaintiffs, | |
| - against - | |
| 59 MURRAY ENTERPRISES, INC., d/b/a NEW YORK DOLLS GENTLEMEN'S CLUB, BARRY LIPSITZ, AAM HOLDING CORPORATION, d/b/a, PRIVATE EYES GENTLEMEN'S CLUB, ANITA MICELI, JAY-JAY CABARET, INC., d/b/a FLASHDANCERS GENTLEMEN'S CLUB, and LYNN LEPOFSKY, | **COMPLAINT** (Jury Trial Demanded) |
| Defendants. | |

Plaintiffs TIFFANY TOTH ("Toth"), GEMMA LEE ("Lee"), JESSA HINTON ("Hinton"), BROOKE TAYLOR ("Taylor"), JESSE GOLDEN ("Golden"), LINA POSADA ("Posada"), SHEENA LEE WEBER ("Weber"), HEATHER RAE YOUNG ("Young"), RACHEL KOREN ("Koren"), SABELLA SHAKE ("Shake"), and URSULA MAYES ("Mayes") (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendants 59 MURRAY ENTERPRISES, INC. ("59 Murray"), d/b/a NEW YORK DOLLS GENTLEMAN'S CLUB, BARRY LIPSITZ ("Lipsitz"), AAM HOLDING CORPORATION ("AAM Holding"), d/b/a, PRIVATE EYES GENTLEMEN'S CLUB, ANITA MICELI ("Miceli"), JAY-JAY CABARET, INC. ("Jay-Jay Cabaret"), d/b/a FLASHDANCERS GENTLEMEN'S CLUB, and LYNN LEPOFSKY ("Lepofsky"), respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, in order to promote their strip clubs New York Dolls Gentlemen's Club ("New York Dolls"), Private Eyes Gentlemen's Club ("Private Eyes"), and/or Flashdancers Gentlemen's Club ("Flashdancers") (collectively, the "Clubs"), each of which is located in Manhattan, New York.

2.      As detailed below, Defendants theft and unauthorized use of Plaintiffs' images, photos and likeness (collectively, "Images"), which in the case of some of the Plaintiffs' is extant as ***of the date of this Complaint***, constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which protects a person's right to privacy and publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; d) defamation, and; e) various common law torts.

3.      Although each of the Clubs is owned by separate corporate entities, the Clubs operate as a single enterprise that, *inter alia*, and as specified below, shares Images of models for purposes of advertising the Clubs on traditional and social media.

4.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any of the Clubs, via any medium.

## JURISDICTION & VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) insofar as there is complete diversity of the parties to this action, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).   This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1).

6.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models, who reside in either California or Texas.

7.      According to publicly available records, the Defendants are corporations formed under the laws of the State of New York, or the principals of said corporations.   Upon information and belief, each corporate defendant operates one of the Clubs, each of which is located in New York County, New York.

8.      Venue is proper in the United States District Court for the Southern District of New York because each Club is located in New York County, New York.

9.      All parties have minimum contacts with New York County, and all of the alleged causes of action arose and accrued in New York County, New York.

10.      The center of gravity for all relevant events alleged in the complaint is predominately located in New York County, New York.

## PARTIES

*Plaintiffs*

11.     Plaintiff Toth is a well known professional model, and a resident of Orange County, California.

12.     Plaintiff Lee is a well known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Hinton is a well known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Taylor is a well known professional model, and a resident of Santa Barbara County, California.

15.     Plaintiff Golden is a well known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Posada is a well known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Weber is a well known professional model, and a resident of Denton County, Texas.

18.     Plaintiff Young is a well known professional model, and a resident of Los Angeles County, California.

19.     Plaintiff Koren is a well known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Shake is a well known professional model, and a resident of Stanislaus County, California.

21.     Plaintiff Mayes is a well known professional model, and a resident of Orange

County, California.

***Defendants***

22.     According to publicly available records, Defendant 59 Murray is a corporation organized under the laws of the State of New York, has a principle place of business at 59 Murray Street, New York, New York, and operates New York Dolls, a strip club located in New York County, New York.

23.     Upon information and belief, Defendant Lipsitz is a resident of the State of New York.  Defendant Lipsitz is identified by the New York Department of State - Division of Corporations, as the Chief Executive Officer of 59 Murray.  Upon information and belief, Defendant Lipsitz, in his capacity as C.E.O. of 59 Murray, maintains operational control over New York Dolls, including all advertising relating thereto.

24.     According to publicly available records, Defendant AAM Holding is a corporation organized under the laws of the State of New York, has a principal place of business at 320 West 45th Street, New York, New York, and operates Private Eyes, a strip club located in New York County, New York.

25.     Upon information and belief, Defendant Miceli is a resident of the State of New York.  Defendant Miceli is identified by the New York Department of State – Division of Corporations, as the Chief Executive Officer of AAM Holding.  Upon information and belief, Defendant Miceli, in her capacity as C.E.O. of AAM Holding, maintains operational control over Private Eyes, including all advertising relating thereto.

26.     According to publicly available records, Defendant Jay-Jay Cabaret is a corporation organized under the laws of the State of New York, has a principal place of business at 235 East 22nd Street, New York, New York, and operate Flashdancers, a strip club located in

New York County, New York.

27.    Upon information and belief, Defendant Lepofsky is a resident of the State of New York.  Defendant Lepofsky is identified by the New York Department of State – Division of Corporations, as the Chief Executive Officer of Jay-Jay Cabaret.  Upon information and belief, Defendant Lepofsky, in her capacity as C.E.O. of Jay-Jay, Holding, maintains operational control over Flashdancers, including all advertising relating thereto.

28.    As noted, *supra*, although each of the Clubs is owned by separate corporate entities, the Clubs operate as a single enterprise that, *inter alia*, and as specified below, shares Images of models for purposes of advertising the Clubs on traditional and social media.  Indeed, Defendants interconnected advertising, branding, internet and social media presence is underscored by the fact that, on the "Locations" section for each of New York Dolls, Private Eyes, and Flashdancers, the names, phone numbers, and locations for each of the Clubs are listed, and there are links for each Club.

## FACTUAL ALLEGATIONS

29.    As set forth immediately below, each Plaintiff is an extremely well known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

30.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

31.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at the particular Club,

or endorsed the Club.

32.     In the case of each and every Plaintiff, such appearance was false.

33.     Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

***Plaintiffs' Backgrounds and Careers***

34.     Toth is an extremely successful model who was the September 2011 *Playboy* Playmate of the Month. Toth has also appeared in a variety of magazines including *Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, as well as appearing in countless other catalogs and publications.   Ms. Toth's popularity and renown is evidence by the fact that she has over 2 million Facebook followers, over 300,000 Instagram followers, and over 100,000 Twitter followers.[1]   In addition to her Toth's modeling work, she owns and maintains her own e-commerce site.

35.     That we know of, Toth is depicted in the photos in Exhibit "A" to promote various events at New York Dolls. These Images depict Ms. Toth in sexually suggestive outfits, including a Halloween costume, a football uniform, lingerie, and sitting in a martini glass, inviting patrons to attend the various events at New York Dolls.   These images were intentionally altered to make it appear that Toth was either a stripper working at New York Dolls, or that she endorsed the club.  Indeed, the copy accompanying one of the pictures of Toth in lingerie states: "Who needs to leave anything to the imagination when the reality is even

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

better," clearly implying that Toth actually, and in "reality", works at New York Dolls.

36.     Toth has never been employed at New York Dolls, has never been hired to endorse New York Dolls, and has received no remuneration for New York Dolls' unauthorized use of her Images.

37.     Gemma Lee is an extremely successful model and the November 2013 *Playboy* Playmate of the Month, the first model from New Zealand to be so appointed.  Gemma Lee has been a professional model since she was 17, and her modeling credits include Australian men's magazine *Ralph Magazine*, *Guitar World, Sports Illustrated*, and many others.  Gemma Lee was crowned the first Miss Monster Energy Cup spokes model, and was named the face of the Playboy Club.  Gemma Lee is likewise a social media influencer, with over 585,000 Instagram followers, and 660,000 Facebook followers. Gemma Lee is also a reality television star in New Zealand, a client of Wilhelmina modeling agency, and a Healthy Brand lifestyle ambassador for Protein World and Skinny Bunny Teas.

38.     That we know of, Gemma Lee is depicted in the photo in Exhibit "B" to promote "Employment Opportunities" at New York Dolls.   The implication of this photo is clearly that Gemma Lee is employed by New York Dolls.  Contrary to this representation, Gemma Lee is not employed at New York Dolls, and never has been.  This Image depicts Gemma Lee in a sexually suggestive outfit beside the copy: "Would you like to work in New York City's most popular, established gentleman's club?"   This image was intentionally altered to make it appear that Gemma Lee was either a stripper working at the club or that she endorsed the club.

39.     Gemma Lee has never been employed at New York Dolls, has never been hired to endorse New York Dolls, and has received no remuneration for New York Dolls' unauthorized use of her Images.

40.     In addition, Gemma Lee is depicted in the photo in Exhibit "C" to promote "Employment Opportunities" at Flashdancers.     As in the case of New York Dolls, the implication of this photo is clearly that Gemma Lee is employed by Flashdancers.  Contrary to this representation Gemma Lee is not employed at Flashdancers, and never has been.  This Image depicts Gemma Lee in a sexually suggestive outfit beside the copy: "Would you like to work in New York City's most popular, established gentleman's club?"  This Image was intentionally altered to make it appear that Gemma Lee was either a stripper working at the Flashdancers, or that she endorsed the club.

41.     Gemma Lee has never been employed at Flashdancers, has never been hired to endorse Flashdancers, and has received no remuneration for Flashdancers' unauthorized use of her Images.

42.     Young is an extremely well known swimsuit, glamour and lingerie model who was named the February 2010 *Playboy* Playmate of the Month. Young has likewise served as been a spokesmodel for brands such as Captain Morgan, Smirnoff, Baileys, and Jose Cuervo, has appeared in the 2010 Import Tuner calendar and the 2011 Fast Dates calendar, was featured in an advertising campaign for the Affliction Clothing Line, and has modeled for such clients as Calao Swimwear, DSO Eyewear, Carrie Amber lingerie, Hustler Lingerie, Superstar Swimwear, and 7 Til Midnight Lingerie. Young has also made various television appearances, and has 359,000 Instagram followers and 92,5000 Twitter followers.

43.     That we know of, Young is depicted in the photos in Exhibit "D" to promote New York Dolls on its Facebook page.  These Images show Young in a sexually suggestive football uniform in order to promote the New York Dolls Super Bowl parties.  These Images were intentionally altered to make it appear that Young was either a stripper working at New York

Dolls, or endorsed New York Dolls, an appearance bolstered by the copy below one of the Images which reads: "COME PARTY WITH US ALL SUPER BOWL WEEK … GET READY FOR THE BIG GAME WITH OUR GORGEOUS ENTERTAINERS IN THEIR FAVORITE FOOTBALL JERSEYS … WE LOOK FORWARD TO PARTYING WITH YOU!"

44.    Young has never been employed at New York Dolls, has never been hired to endorse New York Dolls, and has received no remuneration for New York Dolls' unauthorized use of her Images.

45.    Koren is an internationally known, and highly sought after, model who has walked runways for fashion shows in Miami's Mercedes Benz Fashion Week, filmed for travel TV show *Bikini Destinations*, shot for major campaigns in Los Angeles, and is the face of numerous major brands.  Koren can be seen across the nation on billboards, buildings and bus stops in a campaign for MIDORI along with Kim Kardashian.   As an actress, Ms. Koren has appeared in *Date Night*, with Steve Carell and Tina Fey, in *The Closer*, and many others.  She has also appeared in campaigns for brands such as Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, Modern Salon Magazine, No Fear, Axe Body Spray, Paul Mitchell, Vibra Magazine, Launch Pad Magazine, Cut & Dry Magazine, Hairdo Magazine, Sunset Tan, Divine Boutique, Esquire Magazine, Vogue Magazine, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, Rebel X Magazine, SNI Swimwear, Tommy Bahama, Roma, J Valentine, Sunsets Inc, B Swim, Love Culture, Maxim, Viva Glam Magazine, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, Swim Magazine, American Honey, Have Faith Swimwear.  She also owns her own company, Cashmere Hair Extensions, which appeared on ABC's *Shark Tank* in 2013.  She has over 122,000 followers on Instagram.

46.    That we know of, Koren is depicted in the photo in Exhibit "E" to promote New York Dolls on its website page.  This Image shows Koren in a sexually suggestive outfit in order to promote the New York Dolls "Black & White VIP Party," and was intentionally altered to make it appear that Koren was either a stripper working at New York Dolls, or endorsed New York Dolls.

47.    Koren has never been employed at New York Dolls, has never been hired to endorse New York Dolls, and has received no remuneration for New York Dolls' unauthorized use of her Images.

48.     Shake is a well known model with over a decade's worth of experience modeling for brands such as Chica Rica, Cool Material, and Creative Recreation.  Shake has appeared in *Esquire* magazine, is the current campaign model for Affliction clothing, has appeared in national commercials for companies such as Party City,  and has appeared in feature films including *Shoot 'Em Up*, *Apostles*, and *Date Night*.  Koren has more than 14,000 Instagram followers.

49.    That we know of, Shake is depicted in the photo in Exhibit "F" to promote New York Dolls on its website.  This Image shows Shake in a sexually suggestive outfit in order to promote the New York Dolls "Black & White VIP Party," and was intentionally altered to make it appear that Shake was either a stripper working at New York Dolls, or endorsed New York Dolls.

50.    Shake has never been employed at New York Dolls, has never been hired to endorse New York Dolls, and has received no remuneration for New York Dolls' unauthorized use of her Images.

51.    Mayes is a well known model who has appeared in *Maxim*, *Vogue*, *Elle*, *In Style*,

*Cosmopolitan*, *Marie Claire* and many other publications.  On television, Mayes has appeared on *Deal or No Deal*, *Minute To Win It*, *The Tonight Show*, and T*he Jay Leno Show*.  Mayes has also appeared in commercial campaigns for many companies, including Coronet Diamonds, Volkswagen, Subaru, and Bacardi, and was the cover model and star of the video game, *Juiced 2: Hot Import Nights.*

52.    That we know of, Mayes is depicted in the photo in Exhibit "G" in order to promote New York Dolls.  This Image shoes Mayes in a sexually suggestive outfit and was intentionally altered in order to make it appear that Mayes was a stripper working at New York Dolls, or endorsed New York Dolls.

53.    Mayes has never been employed at New York Dolls, has never been hired to endorse New York Dolls, and has received no remuneration for New York Dolls' unauthorized use of her Images.

54.    Hinton is a world renowned and highly sought after model, who was the July 2011 *Playboy* Playmate of the Month.  Hinton has been active in the entertainment industry since the age of sixteen (16), and has appeared in countless national commercial and television shows.  In 2010 Hinton became the face of the Palms Hotel & Casino's advertising campaign, has hosted the television show *Victory Poker,* has served as the interview personality for *Top Rank Boxing*, and has been the centerpiece of an advertising campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises.  Hinton has also served as a spokes model for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, Protein World, Rhonda Shear Shapewear, Leg Avenue and Roma Costume, and has been a featured cover model for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. Her images have likewise appeared on countless billboards, magazines, posters, and multiple forms of electronic

media.  Ms. Hinton has been named Creative Director for MAJR Media, and she also served as a guest host for the television station KTLA in Los Angeles. In addition, Hinton has earned an elite status as a social media celebrity, with more than 1.1 million followers on Instagram, 872,000 followers on Facebook, and 181,000 followers on Twitter.

55.     That we know of, Ms. Hinton is depicted in the photos in Exhibit "H" to promote various events at Flashdancers.  ***As of the date of this Complaint***, Hinton is prominently featured as the ***homepage banner*** on the Flashdancers website located at www.flashdancersnyc.com.  In addition, Hinton has appeared on the Flashdancers Instagram page, wearing a sexually suggestive blue dress below the copy, "Get in the blue and you'll know what's the #best in #NYC".  These Images depict Hinton in sexually suggestive outfits, and were intentionally altered to make it appear that Hinton was either a stripper working at Flashdancers, or that she endorsed Flashdancers.  This is especially true given the prominence of her photo on the Flashdancers website.

56.     Hinton has never been employed at Flashdancers, has never been hired to endorse Flashdancers, and has received no remuneration for Flashdancers' unauthorized use of her Images.

57.     In addition, Hinton is depicted in the photos in Exhibit "I" to promote various events at Private Eyes.  These Images have appeared on the Private Eyes' website located at www.privateeyes.com, as well as the Private Eyes Facebook, Twitter, and Instagram pages. These various Images depict Ms. Hinton in sexually suggestive outfits, and were intentionally altered to make it appear that Ms. Hinton was either a stripper working at Private Eyes, or that she endorsed Private Eyes.

58.     Hinton has never been employed at Private Eyes, has never been hired to endorse

Private Eyes, and has received no remuneration for Private Eyes' unauthorized use of her Images.

59.     Taylor is also a world renowned model, who has appeared in *FHM*, *Maxim*, *Stuff*, *Playboy, Viva Glam*, and a variety of other magazines.  She has also appeared in commercials and billboards for Fredrick's of Hollywood, Coors Light, and Budweiser, and countless others.

60.     That we know of, Taylor is depicted in the photo in Exhibit "J" to promote the Flashdancers Halloween Party.  This Image depicts Taylor in a sexually suggestive Halloween costume above the copy: "Join us for our annual Halloween Party on Friday October 25th."  This Image was intentionally altered to make it appear that Taylor was either a stripper working at the club or that she endorsed the club, an appearance bolstered by the copy, "join **_us_**…."

61.     Taylor has never been employed at Flashdancers, has never been hired to endorse Flashdancers, and has received no remuneration for Flashdancers' unauthorized use of her Images.

62.     In addition, Taylor is depicted in the photo in Exhibit "K" to promote the Private Eyes Halloween Party.  This image depicts Taylor in a sexually suggestive Halloween costume above the copy: "Join us for our annual Halloween Party on Friday October 25th."  This Image was intentionally altered to make it appear that Ms. Taylor was either a stripper working at Private Eyes, or that she endorsed the club, an appearance bolstered by the copy, "join **_us_**…."

63.     Taylor has never been employed at Private Eyes, has never been hired to endorse Private Eyes, and has received no remuneration for Private Eyes' unauthorized use of her Images.

64.     Golden is a world renowned model, and successful businesswoman, who has appeared in modeling campaigns for a variety of high profile clients, including Abercrombie &

Fitch, Victoria's Secret, Lucy Sport, Coca-Cola, GAP, and Nike, and on the covers of numerous magazines, including the *New York Times*, *Fitness*, *Newport Beach Magazine*, *Yoga International*, and many others.   Golden has also appeared in dozens of commercials, and television and film projects.     In addition, Golden maintains her own website, www.jessegolden.com, where she aims to empower people through the sharing of her "Golden Secrets" concerning health, wellness and yoga.   She also writes for a variety of other magazines and website, and has her own fitness and yoga brand and products.    These expanding business interests are in addition to Golden's continued work as a model for many notable fashion brands.

65.   That we know of, Golden is depicted in the photo in Exhibit "L" to promote the Private Eyes Halloween Party. This image depicts Golden in a sexually suggestive Halloween costume above the copy: "Join us for our annual Halloween Party on Friday October 25th." This Image was intentionally altered to make it appear that Ms. Golden was either a stripper working at Private Eyes, or that she endorsed the club, an appearance bolstered by the copy, "join **_us_**…."

66.   Golden has never been employed at Private Eyes, has never been hired to endorse Private Eyes, and has received no remuneration for Private Eyes' unauthorized use of her Images.

67.   Posada is an internationally known fashion model and designer from Barranquilla, Colombia.  She is best known for her appearances in the *Besame* and *Espiral* lingerie collections, but has also modeled countless other brands, including Pradizia Swimwear, Babalu Swimwear, and Ujeans.

68.   That we know of, Posada is depicted in the photos in Exhibit "M" to promote Private Eyes.  These Images appeared on the Private Eyes website, the Private Eyes Instagram page, and the Private Eyes Facebook page, and depict Posada in a variety of sexually suggestive

outfits inviting patrons to Private Eyes.  These Images were intentionally altered to make it appear that Posada was either a stripper working at Private Eyes, or that she endorsed the club.

69.     Posada has never been employed at Private Eyes, has never been hired to endorse Private Eyes, and has received no remuneration for Private Eyes' unauthorized use of her Images.

70.     Weber is an internationally known model, honors graduate from the Art Institute of Dallas, and currently serves as the Director of Business Development for Harmony Medcare. As a model, Weber has been a *Playboy* Cybergirl of the Month, and has appeared in international editions of *Maxim*, *People*, and *Street Customs Magazine*, to name but a few.  In her capacity as a supercross spokesmodel, Weber has appeared on the television show *The Reality of Speed*, and has likewise served as the SSI spokesmodel "Silspect Shari."  Her acting credits include *Harold and Kumar 2* and *The Pool Boys,* among others.

71.     That we know of, Weber is depicted in the photo in Exhibit "N", which was posted on the Private Eyes Facebook and Instagram pages. This Image depicts Weber in a sexually suggestive outfit inviting patrons to Private Eyes, and was intentionally altered to make it appear that Weber was either a stripper working at Private Eyes, or that she endorsed the club.

72.     Weber has never been employed at Private Eyes, has never been hired to endorse Private Eyes, and has received no remuneration for Private Eyes' unauthorized use of her Images.

***Defendants' Business***

**New York Dolls**

73.     Upon information and belief, Defendant 59 Murray operates New York Dolls in Manhattan, New York, where it engages in the business of selling alcohol and food in an

atmosphere were nude and/or semi-nude women entertain the business' clientele.

74.     Upon information and belief, and in furtherance of its promotion of New York Dolls, 59 Murray owns, operates and controls the New York Dolls website, located at www.nydollsclub.com (hereinafter, the "New York Dolls website").    In addition, and upon information and belief, New York Dolls owns, operates, and controls the New York Dolls Facebook account, the New York Dolls Twitter account, and the New York Dolls Instagram account.

75.     Upon information and belief, 59 Murray uses the New York Dolls website, and the New York Dolls Facebook, Twitter, and Instagram accounts, to promote New York Dolls, and attract patrons to New York Dolls.

76.     59 Murray does this for its own commercial and financial benefit.

77.     59 Murray has used, advertised, created, printed and distributed the Images of Toth, Gemma Lee, Young, Koren, Shake and Mayes, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at New York Dolls, or endorsed New York Dolls.

78.     59 Murray used Plaintiffs' Images, and created the false impression that they worked at New York Dolls, or endorsed New York Dolls, in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

79.     As 59 Murray was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by New York Dolls, and at no point have any of the Plaintiffs ever endorsed New York Dolls.

80.     All of 59 Murray's activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and 59 Murray did not compensate Plaintiffs for its use of their Images.

81.     As such, Plaintiffs have never received any benefit for 59 Murray's use of their Images.

**Private Eyes**

82.     Upon information and belief, Defendant AAM Holding operates Private Eyes in Manhattan, New York, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

83.     Upon information and belief, and in furtherance of its promotion of Private Eyes, AAM Holding owns, operates and controls the Private Eyes website, located at www.privateeyesnyc.com (hereinafter, the "Private Eyes website").   In addition, and upon information and belief, Private Eyes owns, operates, and controls the Private Eyes Facebook account, the Private Eyes Twitter account, and the Private Eye Instagram account.

84.     Upon information and belief, AAM Holding uses the Private Eyes website, and the Private Eyes Facebook, Twitter, and Instagram accounts, to promote Private Eyes, and attract patrons to Private Eyes

85.     AAM Holding does this for its own commercial and financial benefit.

86.     AAM Holding has used, advertised, created, printed and distributed the Images of Hinton, Golden, Posada, and Weber, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as strippers at Private Eyes, or endorsed Private Eyes.

87.     AAM Holding used the above named Plaintiffs' Images, and created the false

impression that they worked at Private Eyes, or endorsed Private Eyes, in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

88.    As AAM Holding was at all times aware, at no point have any of these Plaintiffs ever been affiliated with or employed by Private Eyes, and at no point have they ever endorsed Private Eyes.

89.    All of AAM Holding's activities, including the thefts of Plaintiffs' Images set forth herein, and publication of same, were done without the knowledge or consent of Plaintiffs, and AAM Holding did not compensate any of the Plaintiffs for its use of their Images.

90.    As such, Plaintiffs have never received any benefit for AAM Holding's use of their Images.

### **Flashdancers**

91.    Upon information and belief, Defendant Jay-Jay Cabaret operates Flashdancers in Manhattan, New York, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

92.    Upon information and belief, and in furtherance of its promotion of Flashdancers, Jay-Jay Cabaret owns, operates and controls the Flashdancers website, located at www.flashdancersnyc.com (hereinafter, the "Flashdancers website").   In addition, and upon information and belief, Jay-Jay Cabaret owns, operates, and controls the Flashdancers Facebook account, the Flashdancers Twitter account, and the Flashdancers Instagram account.

93.    Upon information and belief, Jay-Jay Cabaret uses the Flashdancers website, and the Flashdancers Facebook, Twitter, and Instagram accounts, to promote Flashdancers, and

attract patrons to Flashdancers.

94.     Jay-Jay Cabaret does this for its own commercial and financial benefit.

95.     Jay-Jay Cabaret has used, advertised, created, printed and distributed the Images of Gemma Lee, Hinton, and Taylor, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as strippers at Flashdancers, or endorsed Flashdancers.

96.     Jay-Jay Cabaret used the above named Plaintiffs' Images, and created the false impression that they worked at Flashdancers, or endorsed Flashdancers, in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

97.     As Jay-Jay Cabaret was at all times aware, at no point were these Plaintiffs ever affiliated with or employed by Flashdancers, and at no point have they ever endorsed Flashdancers.

98.     All of Jay-Jay Cabaret's activities, including its theft of Plaintiffs'' Images, and publication of same, were done without the knowledge or consent Plaintiffs, and Jay-Jay Cabaret did not compensate Plaintiffs for its use of their Images.

99.     As such, Plaintiffs never received any benefit for Jay-Jay Cabaret's use of their Images.

***Standard Business Practices in the Modeling Industry***

100.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

101.     The fee that a professional model, such as each of the Plaintiffs, will receive is

negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Theft of Plaintiff's Images***

102.    As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs privacy by using Plaintiffs Images for commercial purposes in order to promote their Clubs by and through various marketing and promotional mediums including, without limitation, the Clubs' Websites, Twitter, Facebook, and Instagram.

103.    Upon information and belief, Defendants showcased Plaintiffs' Images on the Clubs' Websites in order to create the false impression that Plaintiffs worked at one or more of the Clubs, or endorsed one or more of the Clubs.

104.    Upon information and belief, Defendants did so in order to attract clientele to their Clubs, promote their Clubs, and thereby generate revenue for Defendants.

105.    Upon information and belief, Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed one or more of the Clubs.

106.    Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.  This is especially so insofar as each of Plaintiffs' Images have

been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are each strippers.

107.    At no point were any of the Plaintiffs ever affiliated with any of the Clubs, or Defendants.

108.    Each of Plaintiffs' Images was used without her consent.

109.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

110.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

111.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Clubs' Websites, Twitter, Facebook, or Instagram accounts.

112.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

113.    Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Endorsement)**

114.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

115.    The provisions of the Lanham Act, 215 U.S.C. §1125 *et seq*. apply to Defendants and protect Plaintiffs from the conduct described herein.

116.    Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false

impression with the public that Plaintiffs either worked at one or more of the Clubs, or endorsed one of more of the Clubs.

117.    This was done to promote and attract clientele to the Clubs, and thereby generate revenue for the Defendants.

118.    Thus, this was done in furtherance of Defendants' commercial benefit.

119.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, the Clubs, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Clubs.

120.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Clubs.

121.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Clubs, and the goods and services provided by the Clubs.

122.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
**(Violation of N.Y. Civ. Rights Law §§ 50-51)**

123.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

124.    As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at one or more of the Clubs,

or endorsed one or more of the Clubs.

125.   At all relevant times, the Clubs' websites and social media accounts were used and operated by Defendants for advertising and trade purposes.

126.   The Clubs' websites and social media accounts were designed to attract business to the Clubs and generate revenue for Defendants.

127.   Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for the Clubs.

128.   At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their website or social media account.

129.   Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Clubs.

130.   At no point did Defendants ever compensate Plaintiffs for its use of their Images.

131.   No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

132.   Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

133.   In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

134.   In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act,

Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

**THIRD CAUSE OF ACTION**
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act)**

135.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

136.    Defendant operated the Clubs' websites and social media accounts in order to promote the Clubs, to attract clientele thereto, and to thereby generate revenue for Defendants. As such, Defendants' operation of the websites and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

137.    Defendants published Plaintiffs' Images in order to create the false impression that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

138.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Clubs.

139.    As Defendant were at all times aware, Plaintiffs never worked at any of the Clubs, never endorsed any of the Clubs, and never had any affiliation with any of the Clubs.

140.    Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at the Clubs, or endorsed the Clubs.

141.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club websites and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

142.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Defamation)

143.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

144.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Clubs to the general public and potential clientele.

145.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by one or more of the Clubs, that they endorsed one or more of the Clubs, or that they had some affiliation with one or more of the Clubs.

146.    None of these representations were true.

147.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Clubs, or endorsed the Clubs.

148.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Clubs, had no affiliation with the Clubs, had not consented to the use of their Images, and had not been compensated for the use of their Images.

149.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Clubs, had no affiliation with the Clubs, had not consented to the use of their Images, and had not been compensated for the

use of their Images.

150.   Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

151.   Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

152.   Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

153.   This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

154.   Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

155.   Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

156.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

157.    Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models that were used on the Clubs' websites and social media accounts.

158.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

159.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and New York law, were not violated.

160.    In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted, and had not paid.

161.    Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

162.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Conversion)

163.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

164.   Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

165.   By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

166.   As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

167.   Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

168.   As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

169.   Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

170.   Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

171.   Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

172.   Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

173.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

174.    As such, Plaintiffs have been damaged in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### EIGHTH CAUSE OF ACTION
#### (Quantum Meruit)

175.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

176.    Plaintiffs are each world famous models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

177.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

178.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, or endorse their Club, Defendants have not compensated Plaintiffs.

179.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

### DEMAND FOR JURY TRIAL

180.    Plaintiffs demand trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through eighth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       October 13, 2015

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
    John V. Golaszewski, Esq.
    1745 Broadway, 17th Floor
    New York, New York
    T: 855.267.4457
    F: 855.220.9626

*Attorneys for Plaintiffs*
