UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

TIFFANY TOTH, CARMEN ELECTRA,
GEMMA LEE, JESSA HINTON, BROOKE
TAYLOR, JESSE GOLDEN, LINA POSADA
SHEENA LEE WEBER, HEATHER RAE
YOUNG, RACHEL KOREN, SABELLA
SHAKE and URSULA MAYES,

Case No. 15-cv-08028(NRB)

Plaintiffs,

v.

**DEFENDANTS STATEMENT OF
UNDISPUTED FACTS PURSUANT TO
FEDERAL RULE 56.1 IN SUPPORT OF
THEIR MOTION FOR SUMMARY
JUDGMENT**

59 MURRAY ENTERPRISES, INC. d/b/a New
York Dolls Gentlemen's Club, BARRY LIPSITZ,
ANITA MICELI, JAY-JAY CABARET, INC.
d/b/a Flashdancers Gentlemen's Club, MARSHA
LIPSITZ and AAM HOLDING CORPORATION
d/b/a Private Eyes Gentlemen's Club,
Defendants.

-----------------------------------------------------------X

ANITA MICELI, JAY-JAY CABARET, INC.,
59 MURRAY ENTERPRISES, INC., AAM
HOLDING CORPORATION, BARRY LIPSITZ,
and MARSHA LIPSITZ,

Third-Party Plaintiffs,

v.

INTERNET MANAGEMENT CORP. and
MELANGE MEDIA GROUP LLC,

Third-Party Defendants.

-----------------------------------------------------------X

Defendants, by their undersigned attorneys, submit this Statement of Undisputed Facts in

support of their motion for summary judgment:[1]

---

[1]   The following documents are referenced herein: The declaration of Peter T. Shapiro, Esq. (the "Shapiro
Decl."), the declaration of Barry Albert Lipsitz, (the "Barry Albert Decl."), the declaration of Barry Lipsitz (the
"Barry Lipsitz Decl."), the declaration of Anita Miceli (the "Miceli Decl."), the declaration of Marsha Lipsitz (the
"M. Lipsitz Decl."); the affidavit of Robert Klein (the "Klein Aff."), the affidavit of Joseph Hunter, (the "Hunter
Aff."), the affidavit of Paul Brown (the "Brown Aff."), the transcripts of Plaintiffs' deposition (cited to as the "Toth
Tr.", "Farrell Tr.", "Hinton Tr.", "Golden Tr.", "Posada Tr.", "Weber Tr.", "Young Tr.", "Koren Tr.", "Shake Tr.",
"Mayes Tr.", and "Patrick Tr."), and the transcript of Paul Brown (cited to as the "Brown Tr".).

1.      Plaintiffs are all self-proclaimed models who have widespread social media followings. (DE 18, Farrell Tr. 94:8, Hinton Tr. 126:11, Golden Tr. 113:17-113:20; 114:6, Shake Tr. 92:6; 101:6-101:11, Mayes Tr. 98:25, Weber Tr. 111:15-111:16, Young Tr. 112:16-112:17; 112:20-112:21)

2.      Defendants Jay-Jay Cabaret, Inc., 59 Murray Enterprises, Inc., and AAM Holding Corporation each operate separate gentlemen's clubs in New York City (collectively, the "Clubs"). (DE 18)

3.      Jay-Jay Cabaret, Inc. operates Flashdancers Gentlemen's Club. (DE 18)

4.      59 Murray Enterprises, Inc. operates New York Dolls Gentlemen's Club. (DE 18)

5.      AAM holding Corporation operates Private Eyes Gentlemen's Club. (DE 18)

### *Plaintiff Tiffany Toth*

6.      Exhibit A1 to the Second Amended Complaint ("2AC") is a photograph depicting Toth that was posted on New York Dolls' website on an unspecified date. (DE 18)

7.      Exhibit A2 to the 2AC is a photograph depicting Toth that was posted on New York Dolls' social media account on April 15, 2014. (DE 18)

8.      Exhibit A3 to the 2AC is a photograph depicting Toth that was posted on New York Dolls' website on October 7, 2014. (DE 18)

9.      Exhibit A4 to the 2AC is a photograph depicting Toth that was posted on New York Dolls' social media site on an unspecified date. (DE 18)

10.     Exhibit A5 to the 2AC is a photograph depicting Toth that was posted on New York Dolls' social media account on April 15, 2014. (DE 18)

11.     Toth was hired to take the photographs depicted in Exhibit A to the 2AC, by or for Mystery House and Roma Costumes. (Toth Tr. 9:20; 10:22)

12.     Toth has modeled for Roma Costumes in the past and typically signs a model release for the photographs she takes for Roma Costumes. (Toth Tr. 12:13)

13.     Toth usually signs a release for any photoshoot she does. (Toth Tr. 61:20)

14.     Toth considers herself an influencer who is recognized. (Toth Tr. 126:23)

15.     Toth's reported gross income from modeling in 2011 was ▮▮▮ (Toth Tr. Exh. 19)

16.     Toth's reported gross income from modeling in 2012 was ▮▮▮ (Toth Tr. Exh. 20)

17.     Toth's reported gross income from modeling in 2013 was ▮▮▮ (Toth Tr. Exh. 21)

18.     Toth's reported gross income from modeling in 2014 was ▮▮▮ (Toth Tr. Exh. 22)

19.     Toth's reported gross income from modeling in 2015 was $▮▮▮ (Toth Tr. Exh. 23)

20.     Toth's income from 2014 to 2015 has ▮▮▮ due to her social media presence. (Toth Tr. 141:25)

21.     Toth has posted photographs of herself on social media in which she posed semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (See Toth Tr. Exhs. 2-16)

22.     Toth did not recognize Posada in Exhibit M to the 2AC. (Toth Tr. 126:5)

23.     Toth has filed the following cases around the country related to the alleged misuse of her image by gentlemen's clubs and other businesses, among others: *Cielo J. Gibson, et al. v. Faneuil Entertainment, Inc.*, Case No. 2015-CA-0009211 (15th Judicial Circuit of Florida, Palm Beach County); *Cielo Jean Gibson, v. Blue Diamond Dolls, Inc.*, Case No.: 15-006709-CI (6th

Judicial Circuit of Florida, Pinellas County); *Pepaj v. The Dirty Martini Grille, LLC*, No.: 9:15-cv-81720 (U.S. District Court, Southern District of Florida); *Toth v. Nicole Hospitality*, Case No. 15-007538-CI-20 (6th Judicial Circuit of Florida, Pinellas County); *Cielo J. Gibson v. Club Entertainment Group, LLC*, Case No.: 50:2015-CA-011540 (15th Judicial Circuit of Florida, Palm Beach County); *Jaime Faith Edmondson, v. Caliente Resorts, LLC*, Case No.: 8:15-cv-02672 SDM-TBM (U.S. District Court, Middle District of Florida); *Irina Voronina v. Stan Inc.*, Case No.: CACE15019012 (17th Judicial Circuit of Florida, Broward County); *Tiffany Toth v. At The Boulevard Inc.*, Case No.: 2015-028881-CA-01 (11th Judicial Circuit of Florida, Miami Dade County); *Edmondson v. Velvet Lifestyles, LLC*, Case No.: 1:15-cv-24442-JAL (U.S. District Court, Southern District of Florida); *Jaime Edmondson v. RCI Hospitality Holdings, Inc.*, Case No.: 16-cv-2242 (VEC) (United States District Court, Southern District of New York); *Brenda Lee Geiger v. La Oficina of Queens, Inc.*, Case No.: 16-cv- 491(FB)(RML) (United States District Court, Eastern District of New York); *Irina Voronina v. Scores Holding Company, Inc.*, Case No.: 16-cv-2477 (LAK) (United States District Court, Southern District of New York); *Danielle Ruiz v. La Place, Inc.*, Case No.: 2:15-cv- 07104-JMA- ARL (United States District Court, Eastern District of New York)

### *Plaintiff Gemma Lee Farrell*

24.    Exhibit B1 to the 2AC is a photograph depicting Plaintiff Gemma Lee Farrell that was posted on New York Dolls' website on an unspecified date. (DE 18)

25.    Exhibit C1 to the 2AC is a photograph depicting Farrell that was posted on Flashdancers' website on an unspecified date. (DE 18)

26.    2AC Exhibits B1 and C1 are the same image. (Farrell Tr. 9:10)

27.    The photograph of Farrell depicted in Exhibits B1 and C1 to the 2AC was taken

by J Squared Photography for Dreamgirl Lingerie ("Dreamgirl"). (Farrell Tr. 10:4; 10:7)

28.    Farrell has posed for Dreamgirl for the past few years, and has had one year contracts with them for this time frame. (Farrell Tr. 10:23-10:24; 11:3)

29.    Farrell signed a release each time she posed for Dreamgirl. (Farrell Tr. 11:20)

30.    Farrell considers herself a celebrity. (Farrell Tr. 94:8)

31.    Farrell believed Dreamgirl owns the rights to the photographs at issue. (Farrell Tr. 131:6; 131:9)

32.    Farrell has never accessed Defendants' websites or visited any of their Clubs. (Farrell Tr. 136:18)

33.    Farrell has posted photographs of herself on social media in which she posed semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (See Farrell Tr. Exhs. 2-7)

34.    Farrell's reported gross income for 2014 was ▇▇▇▇ (Farrell Tr. Exh. 18)

35.    Farrell signed releases in connection with the photographs depicted in Exhibits B and C to the 2AC, dated July 2, 2011, July 13, 2011, July 20, 2011, July 27, 2011, July 31, 2013, September 17, 2013, October 11, 2013, March 12, 2014, June 17, 2014, September 16, 2014, September 18, 2014, July 9, 2015, September 15, 2015, September 19, 2015, October 29, 2015, October 29, 2015, one from sometime in 2015, and October 17, 2015. (See Farrell Notice to Admit and exhibits attached thereto)

36.    Some of these releases contain identical language which states, "I, the undersigned, hereby grant and convey to Lovin Enterprises, Inc., dba Dreamgirl International ("Company"), its legal representatives and assigns, the exclusive and absolute right and permission, throughout the world, to purchase, own, assign, license, transfer, sell, distribute,

copyright, use, reuse, publish, republish, exhibit, display, produce and reproduce, print and reprint, or to authorize others to do any of the foregoing, in any and all media now existing or hereafter developed, and in any and all forms or formats of distribution, still or moving pictures of me, or artwork depicting me, in whole or in part, whenever created . . . ." (See Farrell Notice to Admit Exhs. A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R)

37.      These releases continue, "[s]uch use may be for any commercial or non-commercial purpose whatsoever including, without limitation, for promoting or advertising the Company or its products, upon catalogs, point-of-purchase materials or other uses directed towards sales of Company's products, or for use on or in conjunction with Company's products, and I hereby consent to such use, in any form or manner in connection with the foregoing, at the sole and absolute discretion of Company. (See Farrell Notice to Admit Exhs. A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R)

38.      These releases go on to say, "I . . . further waive any claim that I may at any time have to the eventual use to which such Images may be applied." (See Farrell Notice to Admit Exhs. A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R). And, "I hereby warrant, transfer, sell and assign all right, title and interest to the Images to Company for the consideration state herein." (See Farrell Notice to Admit Exhs. A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q)

39.      Farrell's day rate for a photoshoot is          (Farrell Tr. 80:20; 80:24; 130:6)

40.      Farrell has been confused with other actresses or models in passing. (Farrell Tr. 136:20)

41.      Farrell did not recognize Posada in Exhibit M to the 2AC. (Farrell Tr. 104:17).

42.      Farrell did not recognize Young in Exhibit D to the 2AC. (Farrell Tr. 103:15-103:16)

43.     Farrell did not recognize Weber in Exhibit N to the 2AC. (Farrell Tr. 104:19).

44.     Farrell did not recognize Shake in Exhibit F to the 2AC. (Farrell Tr. 103:19-103:21)

45.     Farrell did not recognize Koren in Exhibit F to the 2AC. (Farrell Tr. 103:19-103:21)

46.     Farrell did not recognize Mayes in Exhibit G to the 2AC. (Farrell Tr. 104:7)

47.     Farrell did not recognize Golden in Exhibit J to the 2AC. (Farrell Tr. 104:11-104:12)

48.     Farrell did not recognize Golden in Exhibit L to the 2AC. (Farrell Tr. 104:14-104:15)

49.     Farrell has never visited the Clubs. (Farrell Tr. 136:18)

50.     Farrell filed the following case related to the alleged misuse of her image: *Voronina v. Scores Holding Company, Inc.*, Case No. 16-cv-2477(LAK) (United States District Court, Southern District of New York).

### *Plaintiff Heather Rae Young*

51.     Exhibit D1 to the 2AC is a photograph depicting Plaintiff Heather Rae Young that was posted on New York Dolls' social media account on January 23, 2014. (DE 18)

52.     Exhibit D2 to the 2AC is a photograph depicting Young that was posted on New York Dolls' website on an unspecified date. (DE 18)

53.     Young has previously worked at a strip club. (Young Tr. 11021; 110:25)

54.     Young considers herself famous and relevant to the world. (Young Tr. 112:16-112:21)

55.     Young has posted photographs of herself on social media in which she posed

semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (See Young Tr. Exhs. 2-8)

56.     Young reported gross income from modeling in 2009 of ▮▮▮▮▮▮ (Young Tr. Exh. 12)

57.     Young reported gross income from modeling in 2012 of ▮▮▮▮▮▮ (Young Tr. Exh. 16)

58.     Young reported gross income from modeling in 2013 of ▮▮▮▮▮▮ (Young Tr. Exh. 14)

59.     Young reported gross income from modeling in 2014 of ▮▮▮▮▮▮ (Young Tr. Exh. 15)

60.     Young reported gross income from modeling in 2015 of ▮▮▮▮▮▮ (Young Tr. Exh. 11)

61.     Young's day rate for a photoshoot with Leg Avenue was ▮▮▮▮▮▮ (Young Tr. 19:22-19:23; 19:25)

62.     Young's standard rate for a full-day print photoshoot is ▮▮▮▮▮▮ (Young Tr. 60:14; 60:18)

### *Plaintiff Rachel Koren*

63.     Exhibits E and F to the 2AC contain the same image of Koren, which is a photo she was hired to take by Jim Gianatsis for the FastDates calendar in 2009. (Koren Tr. 11:20-11:23; 12:3-12:4). This photo was posted to New York Dolls' website on an unspecified date. (DE 18)

64.     Koren has not worked as a model except for her own company, Cashmere Hair, since 2013. (Koren Tr. 19:1; 40:15-40:16; 40:18)

65.     Koren believes that the average person who goes to a strip club probably would not know her name. (Koren Tr. 103:19-103:20)

66.     Koren does not consider herself a celebrity. (Koren Tr. 109:12)

67.     Koren has posted photographs of herself on social media in which she posed semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (Koren Tr. Exhs. 2-9)

68.     Koren reported a gross income from modeling in 2013 of ████ (Koren Tr. Exh. 29)

69.     Koren signed a release in connection with the photographs depicted in Exhibit E to the 2AC, with Gianatsis Design Associates. The release states, "I Rachel Bernstein do hereby irrevocably consent to and authorize the use and reproduction, by Gianatsis Design Associates or Jim Gianatsis or anyone authorized by Gianatsis Design Associates, of any and all photographs which you have taken of me on this day, negatives or positives, proof of which are hereby attached, or any purpose whatsoever, without further compensation to me. All negatives and positives, together with the prints shall constitute your property, solely and completely." (See Koren Notice to Admit Exh. A)

70.     Koren was paid ████ for the photograph attached to the 2AC. (See Koren Notice to Admit Exhibits)

71.     Koren did not recognize Posada in Exhibit M to the 2AC. (Koren Tr. 96:16)

72.     Koren did not recognize Young in Exhibit D to the 2AC. (Koren Tr. 95:23)

73.     Koren did not recognize Weber in Exhibit N to the 2AC. (Koren Tr. 96:18)

74.     Koren did not recognize Farrell in Exhibit B to the 2AC. (Koren Tr. 95:21)

75.     Koren did not recognize Electra in Exhibit O to the 2AC. (Koren Tr. 96:20-96:21)

76.     Koren has never visited the Clubs. (Koren Tr. 93:20)

77.     Koren has filed the following cases around the country related to the alleged misuse of her image by gentlemen's clubs and other businesses, among others: *Cielo Jean Gibson v. R& B Amusements, Inc.*, Case No. 2015-CA-003358 (1st Judicial Circuit of Florida, Okaloosa County); *Vida Guerra v. Synergy Entertainment Inc.*, Case No.: 512015CA003705CAAXWS (6th Judicial Circuit of Florida, Pasco County); *Irina Voronina v. Stan Inc.*, Case No.: CACE15019012 (17th Judicial Circuit of Florida, Broward County); *Gibson v. Central Florida Liquors LLC*, Case No.: 0:16-cv-61152-UU 00791 (U.S. District Court, Southern District of Florida); *Edmondson v. Velvet Lifestyles, LLC*, Case No.: 1:15-cv-24442-JAL (U.S. District Court, Southern District of Florida); *Edmondson v. RCI Hospitality Holdings, Inc.*, Case No.: 16-cv-2242 (VEC) (United States District Court, Southern District of New York); *Voronina v. Scores Holding Company, Inc.*, Case No.: 16-cv-2477 (LAK) (United States District Court, Southern District of New York).

## *Plaintiff Sabella Shake*

78.     Exhibit F to the 2AC contains an image of Plaintiff Sabella Shake, taken by Gianatsis for a FastDates calendar for which she was paid and signed a release. (Shake Tr. 12:20; 15:17) This photo was posted to New York Dolls' website on an unspecified date. (DE 18)

79.     Shake understands that the company who takes a model's photograph owns the images taken during the photoshoot. (Shake Tr. 29:8-29:9)

80.     Shake considers herself well known. (Shake Tr. 92:6)

81.     Shake has posted photographs of herself on social media in which she posed semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (Shake Tr. Exhs. 2-8)

82.     Shake reported gross income from modeling in 2011 of ▮▮▮ (Shake Tr. Exh. 18)

83. Shake reported gross income from modeling in 2012 of ▮ (Shake Tr. Exh. 19)

84. Shake reported gross income from modeling in 2013 of ▮ (Shake Tr. Exh. 20)

85. Shake reported gross income from modeling in 2015 of ▮ (Shake Tr. Exh. 17)

86. Shake's day rate is ▮ for a photoshoot with Fantasy Lingerie. (Shake Tr. 26:7)

87. Shake was paid ▮ for the photograph attached to the 2AC for which photograph she executed a release. (See Shake Notice to Admit Exhibits)

88. Shake has filed the following cases around the country related to the alleged misuse of her image by gentlemen's clubs, and possibly others: *Gibson v. Hedo Capital Group, LLC*, Case No.: 2016 CA-48 OC (9th Judicial Circuit of Florida, Osceola County); *Voronina v. Scores Holding Company, Inc.*, Case No.: 16-cv-2477 (LAK) (United States District Court, Southern District of New York).

### *Plaintiff Ursula Mayes*

89. Exhibit G to the 2AC contains an image of Plaintiff Ursula Mayes posted on StripClubList.com on an unspecified date in an advertisement for New York Dolls, which is a photograph she was paid to take for Dreamgirl. (Mayes Tr. 16:1)

90. Mayes had multiple one year contracts with Dreamgirl. (Mayes Tr. 16:8)

91. Mayes believes she signed a release with Dreamgirl for the photograph depicted in Exhibit G. (Mayes Tr. 19:13)

92. According to Mayes, releases are generally provided at photoshoots. (Mayes Tr.

94:25)

93.    Mayes does not consider herself a celebrity, but she believes she is a well known professional model. (Mayes Tr. 96:21; 98:25)

94.    Mayes has posted photographs of herself on social media in which she posed semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (Mayes Tr. Exhs. 2-6)

95.    Mayes reported gross income from acting/modeling in 2011 of ▮ (Mayes Tr. Exh. 14)

96.    Mayes reported gross income from acting/modeling in 2012 of ▮ (Mayes Tr. Exh. 13)

97.    Mayes reported gross income from acting/modeling in 2013 of ▮ (Mayes Tr. Exh. 12)

98.    Mayes signed releases in connection with the photographs depicted in Exhibit G to the 2AC, which releases are dated February 6, 2008, April 26, 2007, April 29, 2008, August 5, 2008, September 22, 2008, October 25, 2005, October 27, 2006, October 29, 2008, December 11, 2007, and September 10, 2007. (See Mayes Notice to Admit). Some of these releases contain identical language which states, "I, the undersigned, hereby grant and convey to Lovin Enterprises, Inc., dba Dreamgirl International ("Company"), its legal representatives and assigns, the exclusive and absolute right and permission, throughout the world, to purchase, own, assign, license, transfer, sell, distribute, copyright, use, reuse, publish, republish, exhibit, display, produce and reproduce, print and reprint, or to authorize others to do any of the foregoing, in any and all media now existing or hereafter developed, and in any and all forms or formats of distribution, still or moving pictures of me, or artwork depicting me, in whole or in part, whenever created . . . ." (See Mayes Notice to Admit Exhs. A, C, D, E, H, I, J)

12

99.     These releases continue, "Such use may be for any commercial or non-commercial purpose whatsoever including, without limitation, for promoting or advertising the Company or its products, upon catalogs, point-of-purchase materials or other uses directed towards sales of Company's products, or for use on or in conjunction with Company's products, and I hereby consent to such use, in any form or manner in connection with the foregoing, at the sole and absolute discretion of Company. (See Mayes Notice to Admit Exhs. A, C, D, E, H, I, J)

100.     These releases go on to say, "I . . . further waive any claim that I may at any time have to the eventual use to which such Images may be applied." (See Mayes Notice to Admit Exhs. A, C, D, E, H, I, J). And, "I hereby warrant, transfer, sell and assign all right, title and interest to the Images to Company for the consideration state herein." (See Mayes Notice to Admit Exhs. A, C, D, E, H, I, J)

101.     Other release forms executed by Plaintiff Mayes say, "I hereby give my permission for Dreamgirl to produce, copyright, and/or publish my photograph or images." (See Mayes Notice to Admit Exhs. B, F, G)

102.     Mayes' day rate for a photoshoot was          (Mayes Tr. 18:12-18:14)

103.     Mayes was paid          for the photoshoot during which the photograph attached to the 2AC was taken. (Mayes Tr. 18:3)

104.     Mayes has never visited the Clubs. (Mayes Tr. 96:15; 96:17)

105.     Mayes has filed the following cases, and possibly others, around the country related to the alleged misuse of her image against gentlemen's clubs and other businesses: *Gibson v. Central Florida Liquors LLC*, Case No.: 0:16-cv-61152-UU 00791 (U.S. District Court, Southern District of Florida); *Voronina v. Stan Inc.*, Case No.: CACE15019012 (17th Judicial Circuit of Florida, Broward County); *Canas v. S & J. Crazy Lizards Entertainment,*

*LLC*, Case No.: 9:2016-cv-80902 (U.S. District Court, Southern District of Florida); *Gibson v. White*, Case No.: 3:2016-cv-00392 (U.S. District Court, Middle District of Florida); *Edmondson v. RCI Hospitality Holdings, Inc.*, Case No.: 16-cv-2242 (VEC) (United States District Court, Southern District of New York); *Skinner v. Review Entertainment Corp*, Case No.: 15-cv-7148 (RRM) (PK) (United States District Court, Eastern District of New York); *Voronina v. Scores Holding Company, Inc.*, Case No.: 16-cv-2477 (LAK) (United States District Court, Southern District of New York).

### *Plaintiff Jessa Hinton*

106.    Exhibit H1 to the 2AC is a photograph depicting Plaintiff Jessa Hinton posted on Flashdancers' social media account on April 19, 2015. (DE 18)

107.    Exhibit H2 to the 2AC is a photograph depicting Hinton posted on Flashdancers' website on an unspecified date. (DE 18)

108.    Exhibit H3 to the 2AC is a photograph depicting Hinton found on Google plus images that advertises Flashdancers and was posted on Flashdancers' social media on an unspecified date. (DE 18)

109.    Exhibit H4 to the 2AC is a photograph depicting Hinton that was posted on Flashdancers' social media account on an unspecified date. (DE 18)

110.    Exhibit H5 to the 2AC is a photograph depicting Hinton posted on Flashdancers' social media account on April 19 of an unspecified year. (DE 18)

111.    Exhibit H6 to the 2AC is a photograph depicting Hinton posted on Private Eyes' social media account on April 29, 2015. (DE 18)

112.    Exhibit H7 to the 2AC is a photograph depicting Hinton that was posted on Private Eyes' social media account on April 29 of an unspecified year. (DE 18)

14

113.    Exhibit I1 to the 2AC is a photograph depicting Hinton that was posted on Private Eyes' website on an unspecified date. (DE 18)

114.    Exhibit I2 to the 2AC is a photograph depicting Hinton that was posted on Private Eyes' social media account on April 29 of an unspecified year. (DE 18)

115.    Exhibit I3 to the 2AC is a photograph depicting Hinton that was posted on Private Eyes' social media account on April 29 of an unspecified year. (DE 18)

116.    Exhibit I4 to the 2AC is a photograph depicting Hinton that was posted on Private Eyes' social media account on May 2, 2015. (DE 18)

117.    Exhibit I5 to the 2AC is a photograph depicting Hinton that was found on Google plus images of an advertisement for Private Eyes posted on April 29, 2015. (DE 18)

118.    Forplay Catalog ("Forplay") paid Hinton to take all of the photographs depicted in Exhibits H and I to the 2AC. (Hinton Tr. 9:21-9:22; 10:12-10:13)

119.    Hinton has done a number of photoshoots for Forplay as a model, for some of which she has releases and some of which she does not. (Hinton Tr. 81:11-81:14)

120.    Hinton considers herself a celebrity. (Hinton Tr. 126:11)

121.    Hinton has posted photographs of herself on social media in which she posed semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (Hinton Tr. Exhs.)

122.    Hinton signed a release in connection with the photographs depicted in Exhibits E and F to the 2AC, which release is with Forplay. This release states, "I hereby give for all time to Forplay Catalog, Inc. its heirs, legal representatives and assigns, for those whom Forplay Catalog, Inc. is acting, and those acting with its authority and permission the unrestricted right and permission to copyright and/or exploit in any way, including but not limited to the right and permission to use, re-use, license, sublicense, sell, and resell, publish, and republish the Images

of me or in which I am be included intact or in part, cropped, altered or modified, composite or distorted in character or form, without restriction as to the changes or transformations in conjunction with my own or fictitious name or likeness, or reproduction thereof in color or otherwise, made through any and all media now or hereafter known for illustration, art, promotion, sale, advertising, trade, or any other purpose whatsoever. (Hinton Notice to Admit Exh. D)

123.    This release goes on to say, "I agree that I have no rights to the Images and all rights to the Images belong to Forplay Catalog, Inc. without reservation of rights, in perpetuity, throughout the universe, in all media whether now known or later discovered." (Hinton Notice to Admit Exh. D)

124.    Hinton's day rate for a photoshoot is between ▆▆▆ and ▆▆▆ (Hinton Tr. 76:2-76:5)

125.    For Roma Costumes, Hinton's day rate ranged from ▆▆▆ to ▆▆▆ (Hinton Tr. 98:17-98:18)

126.    Hinton has filed the following cases, and possibly others, around the country related to the alleged misuse of her image against gentlemen's clubs and other businesses: *Pepaj v. The Dirty Martini Grille, LLC*, Case No.: 9:15-cv-81720 (U.S. District Court, Southern District of Florida); *Vickers v. JB Management of Tampa, Inc.*, Case No.: 16-CA-000079 (13th Judicial Circuit of Florida, Hillsborough County); *Edmondson v. Caliente Resorts, LLC*, Case No.: 8:15-cv-02672 SDM-TBM (U.S. District Court, Middle District of Florida); *Hinton v. MHHS-Sinsations, LLC d/b/a Sinsations*, Case No.: 2016-CA- 000909 (Circuit Civil Court of Duval, 4th Judicial Circuit); *Edmondson v. Velvet Lifestyles, LLC*, Case No.: 1:15-cv-24442-JAL (U.S. District Court, Southern District of Florida); *Banx v. TMC Beverages of Dallas, Inc.*; Case

No. DC-16-00030 (Travis County, TX); *Edmondson v. RCI Hospitality Holdings, Inc.*, Case No.: 16-cv-2242 (VEC) (United States District Court, Southern District of New York); *Skinner v. Review Entertainment Corp.*, Case No.: 15-cv-7148 (RRM) (PK) (United States District Court, Eastern District of New York); *Voronina v. Scores Holding Company, Inc.*, Case No.: 16-cv-2477 (LAK) (United States District Court, Southern District of New York).

### *Plaintiff Jesse Golden*

127.    Exhibit J1 to the 2AC is a photograph depicting Plaintiff Jesse Golden posted on Flashdancers' website on an unspecified date. (DE 18)

128.    Golden was paid to take this photograph for Leg Avenue. (Golden Tr. 15:11-15:12)

129.    This photograph was posted on Leg Avenue's website in the past. (Golden Tr. 19:12)

130.    Exhibit K1 to the 2AC is a photograph depicting Golden posted on Private Eyes' website on an unspecified date. (DE 18)

131.    Golden was paid to take this photograph by Leg Avenue. (Golden Tr. 23:21)

132.    Exhibit L1 to the 2AC is a photograph depicting Golden posted on Private Eyes' website on an unspecified date. (DE 18)

133.    Golden was paid to take this photograph by Leg Avenue. (Golden Tr. 24:4)

134.    Golden had a contract with Leg Avenue. (Golden Tr. 15:22)

135.    Golden understands that it is standard practice for a model to sign a release when participating in photoshoots with various companies. (Golden Tr. 35:24)

136.    Her understanding of a release is that the company who takes the photographs can use the images they take. (Golden Tr. 36:1-36:2)

137.    Golden believes it is the case that some companies take a model's photograph and sell it to a stock photo company. (Golden Tr. 64:12)

138.    Golden considers herself to be in the public light but not a celebrity. (Golden Tr. 113:17-113:20; 114:6)

139.    Golden has posted photographs of herself on social media in which she posed semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (Golden Tr. Exhs. 2-7)

140.    Golden reported gross income from modeling in 2009 of            (Golden Tr. Exh. 16)

141.    Golden reported gross income from modeling in 2012 of            (Golden Tr. Exh. 17)

142.    Golden reported gross income from modeling in 2013 of            (Golden Tr. Exh. 18)

143.    Golden reported gross income from modeling in 2015 of            (Golden Tr. Exh. 19)

144.    In 2010 Golden executed an exclusive contract with Leg Avenue in conjunction with a release by which she assigned the rights to the photographs at issue, without limitation, to Leg Avenue. (Golden Tr. Exh. 10)

145.    Golden has filed the following cases, and possibly others, around the country related to the alleged misuse of her image by gentlemen's clubs and other businesses: *Gibson v. Blue Diamond Dolls, Inc.*, Case No.: 15-006709-CI (6th Judicial Circuit of Florida, Pinellas County); *Pepaj v. The Dirty Martini Grille, LLC*, Case No.: 9:15-cv-81720- U.S. District Court, Southern District of Florida); *Toth v. Nicole Hospitality*, Case No. 15-007538-CI-20 (6th Judicial Circuit of Florida, Pinellas County); *Cielo J. Gibson v. Club Entertainment Group, LLC*, Case

No.: 50:2015-CA-011540 (15th Judicial Circuit of Florida, Palm Beach County); *Pepaj v. The Dirty Martini Grille, LLC*, Case No.: 9:15-cv-81720 (U.S. District Court, Southern District of Florida); *Edmondson v. Velvet Lifestyles, LLC*, Case No.: 1:15-cv-24442-JAL (U.S. District Court, Southern District of Florida); *Voronina v. Scores Holding Company, Inc.*, Case No.: 16-cv-2477 (LAK) (United States District Court, Southern District of New York).

### *Plaintiff Lina Posada*

146.    Exhibit M1 to the 2AC is a photograph depicting Plaintiff Lina Posada that was posted on Private Eyes' social media account on March 31, 2014. (DE 18)

147.    Posada was paid to take this photograph by Besame approximately five years ago. (Posada Tr. 9:25; 10:3; 10:5)

148.    Posada contracted directly with Besame for this photograph. (Posada Tr. 13:4-13:5)

149.    Exhibit M2 to the 2AC is a photograph depicting Posada that was posted on Private Eyes' social media account on an unspecified date. (DE 18)

150.    Posada was paid by Espiral to take this photograph. (Posada Tr. 17:3)

151.    Exhibit M3 to the 2AC is a photograph depicting Posada that was posted on Flashdancers' social media account on an unspecified date. (DE 18)

152.    Exhibit M4 to the 2AC is a photograph depicting Posada that was posted on Private Eyes' social media account in March of 2014. (DE 18)

153.    Exhibit M5 to the 2AC is a photograph depicting Posada that was posted on Private Eyes' social media account on April 1, 2014. (DE 18)

154.    Posada has never been to any of the Clubs. (Posada Tr. 23:25)

155.    Posada's reported gross income from modeling in 2015 was ▮▮▮▮ (Posada Tr.

Exh. 10)

156.    Posada has posted photographs of herself on social media in which she posed semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (See Posada Tr. Exhs. 2-5)

157.    Posada has filed the following cases, and possibly others, around the country related to the alleged misuse of her image by gentlemen's clubs and other businesses: *Posada v. Club Madonna, Inc.*, Case No.: 2015-024146-CA-01 (11th Judicial Circuit of Florida, Miami Dade County); *Cielo Jean Gibson v. BTS North, Inc.*, Case No.: 2015-026737-CA-01 (11th Judicial Circuit of Florida, Miami Dade County); *Canas v. S & J. Crazy Lizards Entertainment, LLC*, Case No.: 9:2016-cv-80902 (U.S. District Court, Southern District of Florida); *Gibson v Central Florida Liquors LLC*, Case No.: 0:16-cv-61152-UU 00791 (U.S. District Court, Southern District of Florida); *Paola Canas v. Flash Dancers, Inc.*, Case No.: 3:16-cv-00393-TJC-JRK (U.S. District Court, Southern District of Florida); *Edmondson v. Velvet Lifestyles, LLC*, Case No.: 1:15-cv-24442-JAL (U.S. District Court, Southern District of Florida); *Timed Out, LLC v. Crazy Horse, Inc.*, Case No.: CGC-15-547904 (San Francisco County, Civic Center Courthouse); *Edmondson v. RCI Hospitality Holdings, Inc.*, Case No.: 16-cv-2242 (VEC) (United States District Court, Southern District of New York); *Voronina v. Scores Holding Company, Inc.*, Case No.: 16-cv-2477 (LAK) (United States District Court, Southern District of New York).

### *Plaintiff Sheena Lee Weber*

158.    Exhibit N1 to the 2AC is a photograph of Plaintiff Sheena Lee Weber that was posted on Private Eyes' social media account on April 8, 2014. (DE 18)

159.    Exhibit N2 to the 2AC is a photograph depicting Weber that was posted on

Private Eyes' social media account on April 8, 2014. (DE 18)

160.    Both Exhibits N1 and N2 depict the same photograph of Weber were taken for her personal website by photographer Johnny Crosslin. (Weber Tr. 14:10; 14:12-14:13; 15:2)

161.    Weber believes Johnny Crosslin does not have the rights to this photograph, but he has owned the rights to other photographs he has taken of her in the past and has sold these other photographs. (Weber Tr. 20:7. 20:10-20:12)

162.    Weber has previously worked as a stripper. (Weber Tr. 106:23)

163.    Weber considers herself a celebrity during the period she was modeling more frequently. (Weber Tr. 111:1-111:2; 111:15-111:16)

164.    Weber has posted photographs of herself on social media in which she posed semi-nude, impliedly nude, and scantily-clad in lingerie and costumes. (Weber Tr. Exhs. 2-11)

165.    Weber reported gross income from modeling in 2009 of ▮ (Weber Tr. Exh. 12)

166.    Weber reported gross income from modeling in 2010 of ▮ (Weber Tr. Exh. 13)

167.    Weber reported gross income from modeling in 2011 of ▮ (Weber Tr. Exh. 14)

168.    Weber reported gross income from modeling in 2012 of ▮ (Weber Tr. Exh. 15)

169.    Weber reported gross income from modeling in 2013 of ▮ (Weber Tr. Exh. 16)

170.    Weber reported gross income from modeling in 2015 of ▮ (Weber Tr. Exh. 17)

171.    Weber's rate to shoot a calendar photoshoot for two to three days was █████ to █████ (Weber Tr. 30:2-30:4; 20:6)

172.    Weber has filed the following cases, and possibly others, around the country related to the alleged misuse of her image against gentlemen's clubs and other businesses: *Edmondson v. RCI Hospitality Holdings, Inc.*, Case No.: 16-cv-2242 (VEC) (United States District Court, Southern District of New York); *Gibson v. SCE Group, Inc.,* Case No.: 15-cv-8168(ER) (DCF) (United States District Court, Southern District of New York); *Voronina v. Scores Holding Company, Inc.*, Case No.: 16-cv-2477 (LAK) (United States District Court, Southern District of New York).

## *Plaintiff Carmen Electra*

173.    Exhibit O1 to the 2AC is a photograph of Plaintiff Carmen Electra, whose real name Tara Leigh Patrick, posted on New York Dolls' social media account on March 3, 2014. (DE 18)

174.    This photograph was taken for a magazine as a promotion for a movie called "I Want Candy", (Patrick Tr. 12:3-12:9; 13:11)

175.    Electra signed a release for the photograph at issue, which gave permission for photograph to use this photograph for Loaded Magazine in 2006. (Patrick Tr. 12:20; 15:2-15:15; 86:25-87:12)

176.    This image depicted in Exhibit O to the 2AC was also used to advertise a line of stripper poles she promoted, called the Electra Pole. (Patrick Tr. 16:17; 17:11-18:5; 93:2-93:6)

177.    Generally speaking, Electra always signs a release when she participates in a photoshoot. (Patrick Tr. 28:15-29:8)

178.    Electra has been involved with various products promoting sexual activity,

including one called Flesh Light Lubricant. (Patrick Tr. 39-40)

179.    Electra has appeared in multiple advertisements for strip clubs in the past. (Patrick Tr. 43:16; 43:21-44:9)

180.    Electra has been paid to promote gentlemen's clubs via public appearances at the Clubs. (Electra Tr. 43:16, 46:20)

181.    Electra has appeared in films with adult themes. (Patrick Tr. 83:24-83:25; 85:6; 86:8-86:16).

182.    CE Licensing, LLC, which is Electra's LLC formed for purposes of receiving payment for her modeling work, reported income in 2009 of ▇▇▇▇ (Patrick Tr. Exh. 15)

183.    CE Licensing reported income in 2010 of ▇▇▇ (PLAINTIFF001511)

184.    CE Licensing reported income in 2011 of ▇▇▇ (PLAINTIFF001515)

185.    CE Licensing reported income in 2012 of $▇▇ (PLAINTIFF001519)

186.    Electra Blue Productions, Inc., which is Electra's LLC formed for purposes of receiving payments for her modeling and acting work, reported income in 2009 of ▇▇▇ (PLAINTIFF001524)

187.    Electra   Blue   Productions   reported   income   in   2010   of ▇▇▇▇ (PLAINTIFF001527)

188.    Electra   Blue   Productions   reported   income   in   2011   of ▇▇▇▇ (PLAINTIFF001529)

189.    Electra   Blue   Productions   reported   income   in   2012   of ▇▇▇▇ (PLAINTIFF001532)

190.    Electra filed the following cases, and possibly others, around the country related to the alleged misuse of her image by gentlemen's clubs and other businesses: *Edmonson v.*

*Caliente Resorts, LLC*, No. 8:15-cv-02672 (SDM)(TBM) (U.S. District Court, Middle District of Florida); *Edmonson v. RCI Hospitality Holdings, Inc.*, Case No. 16-cv-2242(VEC) (U.S. District Court, Southern District of New York); *Geiger v. La Oficina of Queens, Inc.*, Case No. 16-cv-491 (FB)(RML) (U.S. District Court, Eastern District of New York); *Voronina v. Scores Holding Company, Inc.*, Case No. 16-cv-2477(LAK) (United States District Court, Southern District of New York).

191. Plaintiffs' tax returns produced during discovery show that their income ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from 2009 to 2016. (Toth Tr. Exhs. 19; 20; 21; 22; 23, Farrell Tr. Exh. 18, Young Tr. Exhs. 11; 12; 14; 15; 16, Koren Tr. Exh. 29, Shake Tr. Exhs. 17; 18; 19; 20, Mayes Tr. Exhs. 12; 13; 14, Golden Tr. Exhs. 16; 17; 18; 19, Weber Tr. Exhs. 12; 13; 14; 15; 16; 17, Patrick Tr. Exh. 15, PLAINTIFF001511, PLAINTIFF001515, PLAINTIFF001519, PLAINTIFF001524, PLAINTIFF001527, PLAINTIFF001529, PLAINTIFF001532)

192. Defendants did not garner any additional profits from using the images. When the images were used to promote special events, such as a Super Bowl or Halloween party, there was no evidence of an increase in revenue attributable to these special events. (Barry Lipsitz Decl. ¶ 17)

193. Defendant Barry Lipsitz is the sole owner of 59 Murray Enterprises, Inc., part owner of AAM Holding Corporation, and part owner of Jay-Jay Cabaret, Inc. (Barry Lipsitz Decl. ¶ 1)

194. Barry Lipsitz has no involvement with the advertisements or content posted on the Clubs' social media accounts or websites. (Barry Lipsitz Decl. ¶ 4)

195. Paul Brown of Internet Management Corporation (formerly Cybertech) ("IMC")

designed the Clubs' websites. (Barry Lipsitz Decl. ¶ 2, Barry Albert Decl. ¶ 5, Brown Aff. ¶ 1)

196.    Paul Brown and his IMC staff have been solely responsible for creating and publishing all advertising and marketing materials on the Clubs' websites from approximately the year 2000 to the present day. (Barry Lipsitz Decl. ¶ 3, Brown Tr. 8:4, Brown Aff. ¶ 3)

197.    All the images of Plaintiffs contained in the exhibits to the 2AC (the "Images") were posted by IMC on the Clubs' websites, except the image depicting Plaintiff Carmen Electra. (Barry Lipsitz Decl. ¶ 6)

198.    Melange Media Group LLC ("Melange") ran the Clubs' social media accounts. (Barry Albert Decl. ¶ 3)

199.    The image of Carmen Electra on the social media site it created and operated for 59 Murray Enterprises, Inc. was posted by Melange. (Barry Lipsitz Decl. ¶ 6)

200.    Paul Brown told Barry Lipsitz and Barry Albert he had releases from Forplay for all the photographs at issue. (Barry Lipsitz Decl. ¶ 13)

201.    Paul Brown advised Barry Lipsitz that he had release from Forplay for all the Images with the exception of the image depicting Carmen Electra (Barry Lipsitz Decl. ¶ 13)

202.    Barry Lipsitz' and Barry Albert's understanding is that all the Images fell under the general release Paul Brown told Barry Lipsitz he had for these images. (Barry Albert Decl. ¶ 6)

203.    Barry Lipsitz believes that Paul Brown may have learned since the filing of this lawsuit that IMC did not have the rights he thought it had because Forplay may not have had the rights it represented it had; Barry Lipsitz is now uncertain to what extent Forplay or IMC had any of the rights. (Barry Lipsitz Decl. ¶ 14)

204.    Barry Lipsitz did not periodically check the Clubs' websites or the social media

accounts. (Barry Lipsitz Decl. ¶ 10)

205.    Barry Lipsitz was not aware of the Clubs' use of the Images on social media or the websites at any time prior to Plaintiffs having come forward with their claims. (Barry Lipsitz Decl. ¶ 11)

206.    Barry Lipstiz did not know whose images were displayed on the Clubs' social media accounts or websites. (Barry Lipsitz Decl. ¶ 11)

207.    Barry Lipsitz and Barry Albert had no knowledge of the use of the Images or any potential liability arising from the use of the Images at the time the Images were posted, as they believed the proper rights had been secured. (Barry Lipsitz Decl. ¶ 12, Barry Albert Decl. ¶ 10)

208.    Paul Brown has accepted full responsibility for any liability attributable to the possible use of any Images on the Clubs' websites without the proper authorization. (Barry Lipsitz Decl. ¶ 15; Brown Aff. ¶ 16)

209.    After this action was filed, the Clubs directed their contractors to cause all of the images of Plaintiffs to be removed from the websites and social media. (Barry Lipsitz Decl. ¶ 16)

210.    Barry Albert Lipsitz ("Barry Albert"), Barry Lipsitz' son, handled the Clubs' website and social media accounts as the contact person for the contractors. (Barry Albert Decl. ¶¶ 1, 4)

211.    The Clubs never requested that any particular individuals' photos be used on these websites or social media; they merely requested suitable photos of models to match the required event or purpose of a particular web page, such as for a Super Bowl Party. (Barry Lipsitz Decl. ¶ 7, Barry Albert Decl. ¶ 11)

212.    The Clubs were unaware of the identities of any of the models depicted in the photos their contractor place on websites or social media. The Clubs did not learn that any of the

Plaintiffs were depicted until they learned of Plaintiffs' present claims against Defendants. The Clubs were not aware until that time that the use of the Images was allegedly violating any individuals' rights. (Barry Lipsitz Decl. ¶ 8, Barry Albert Decl. ¶ 12)

213.    Barry Albert is, and was during the time period at issue in this litigation, an on-site manager of all three of the Clubs. (Barry Albert Decl. ¶ 2)

214.    Barry Albert was told by Defendants' website manager, Paul Brown, that there were releases for every photograph used on the Clubs' websites. (Barry Albert Decl. ¶¶ 5, 6)

215.    Barry Albert trusted that IMC had these rights when he put up an advertisement or an image on the Clubs' websites. (Barry Albert Decl. ¶ 7)

216.    Barry Jr. did not provide content to Melange Media or IMC. (Barry Albert Decl. ¶ 8)

### *Defendants Anita Miceli and Marsha Lipsitz*

217.    Anita Miceli is a former co-owner of Defendant AAM Holding Corporation. (Miceli Decl. ¶ 1). Her ownership of AAM ended in 2010 when she sold her shares. (Miceli Decl. ¶ 2)

218.    Miceli has never had any ownership interest in Defendants 59 Murray Enterprises, Inc. and Jay-Jay Cabaret, Inc. (Miceli Decl. ¶ 3)

219.    Marsha Lipsitz is a co-owner of Defendants Jay-Jay Cabaret Inc. and AAM Holding Corporation and a former owner of Defendant 59 Murray Enterprises, Inc. (M. Lipsitz Decl. ¶ 1)

220.    As of June 13, 2008, Marsha Lipsitz no longer owned any part of 59 Murray. (M. Lipsitz Decl. ¶ 3)

221.    Since October 29, 2009, Marsha Lipsitz has owned 50% of the shares of Jay-Jay

Cabaret. (M. Lipsitz Decl. ¶ 5)

222.    From October 22, 2010 until March 22, 2017, Marsha Lipsitz owned 10 shares of AAM. (M. Lipsitz Decl. ¶ 7)

223.    Since March 22, 2017, Marsha Lipsitz has owned five shares of AAM. (M. Lipsitz Decl. ¶ 8)

224.    Marsha Lipsitz is unaware of how the Defendants came to use and operate their website and social media generally and specifically as to the use of any photos of the Plaintiffs. (M. Lipsitz Decl. ¶ 12)

225.    Anita Miceli and Marsha Lipsitz have no knowledge of the factual circumstances pertaining to the allegations in the 2AC, specifically, the alleged use by the Defendants of the images of Plaintiffs are attached as exhibits. (Miceli Decl. ¶ 4, M. Lipsitz Decl. ¶ 2)

226.    Anita Miceli and Marsha Lipsitz have not had, during any relevant time, any involvement with any social media page, website, or other online advertising for any of Defendants. (Miceli Decl. ¶ 5, M. Lipsitz Decl. ¶¶ 4, 6, 9, 10)

227.    Anita Miceli and Marsha Lipsitz did not see or become aware of any of the advertisements or postings at issue at any time prior to the filing of this litigation and as a result have no personal information about whether the photographs in question were utilized for advertising by the Defendants or how that came to pass if the photographs were utilized. (Miceli Decl. ¶ 7, M. Lipsitz Decl. ¶ 11)

### *Third-Party Defendant Paul Brown and IMC*

228.    Forplay told Brown after this lawsuit being filed that it would not do a photo shoot a model unless she executed a release. (Brown Aff. ¶ 6)

229.    Forplay sent out their catalog along with a CD to IMC on a monthly basis with

hundreds of images. (Brown Aff. ¶ 7)

230.    Brown never questioned his rights to post the images. (Brown Aff. ¶ 8)

231.    Brown believed he had the rights to use every image he used and that he would never post an image he did not have the rights to intentionally. (Brown Tr. 23:5-23:9, Brown Aff. ¶ 7, 11)

232.    Brown told Defendants that he had releases from Forplay for all the images attached to the 2AC that IMC had posted. (Brown Aff. ¶ 5)

233.    Browns' understanding is that all the photographs in this case that were posted on the Clubs' websites came from the Forplay catalogues provided to him. To the extent this is not the case, his understanding is the photos would have come from another source that would have assured IMC the photos could be freely used as the rights to had been conveyed. (Brown Aff. ¶ 12)

234.    IMC chose all of the Images and prepared the content that accompanied the postings made by IMC on the websites. IMC posted the images and content on the Clubs' websites; Defendants did not approve of the Images or content posted. (Brown Aff. ¶ 13)

235.    Defendants did not request images of any particular models for any ads or website postings, and IMC did not tell them whose images were being used. Generally, IMC would not know the models' identities. (Brown Aff. ¶ 14)

236.    IMC did not intentionally or knowingly post any photographs of Plaintiffs or any other models, including the Images, on the Clubs' websites without believing it had secured the rights to do so. (Brown Aff. ¶ 15)

237.    IMC is responsible for any problems with respect to rights or licensing of the Images that it selected and posted. (Brown Tr. 39:24-40:1, Brown Aff. ¶ 16)

238.    IMC posted on the Clubs' websites all of the images attached to the 2AC, other

than any images apparently posted on social media of Carmen Electra. (Brown Aff. ¶ 4)

Dated:    New York, New York
          June 29, 2018

## LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Peter T. Shapiro

Peter T. Shapiro, Esq.
77 Water Street
New York, NY 10005
212.232.1300
Peter.shapiro@lewisbrisbois.com
Attorneys for Defendants