**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TIFFANY TOTH, GEMMA LEE, JESSA HINTON, BROOKE TAYLOR, JESSE GOLDEN, LINA POSADA, SHEENA LEE WEBER, HEATHER RAE YOUNG, RACHEL KOREN, SABELLA SHAKE, URSULA MAYES, and CARMEN ELECTRA, | Case No. 15-cv-8028 (NRB) |
| Plaintiffs, | |
| - against - | |
| 59 MURRAY ENTERPRISES, INC., d/b/a NEW YORK DOLLS GENTLEMEN'S CLUB, BARRY LIPSITZ, AAM HOLDING CORPORATION, d/b/a, PRIVATE EYES GENTLEMEN'S CLUB, ANITA MICELI, JAY-JAY CABARET, INC., d/b/a FLASHDANCERS GENTLEMEN'S CLUB, and MARSHA LIPSITZ, | **Oral Argument Requested** |
| Defendants. | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER  SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**THE CASAS LAW FIRM, P.C.**
John V. Golaszewski, Esq.
1745 Broadway, 17th Floor
New York, New York
T: 646.872.3178
F: 855.220.9626

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

    Cases ................................................................................................................ ii

    Statutes ............................................................................................................. v

ARGUMENT ................................................................................................................ 1

    I.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT OF
        THE SAC…………………………………………………………………..1

        A.    Standard Under Rule 56………………………………………………1

        B.    Plaintiffs are Entitled to Summary Judgment on Their Lanham Act
            Claim………………………………………………………………….2

            i.    The Advertisements Make False and Misleading
            Representations of Fact………………………………………2

            ii.    Defendants' False and Misleading Advertisements were Likely
            to Cause Consumer Confusion Under the *Polaroid* Factors………5

                a.    Similarity of Marks………………………………..5

                b.    Proximity of the Marks……………………………5

                c.    Consumer Confusion……………………………..6

                d.    Strength of Plaintiff's Marks………………………7

                e.    Bad Faith…………………………………………10

        C.    Plaintiffs are Entitled to Summary Judgment on Their N.Y. Civil
            Rights Law §§ 50-51 Claim…………………………………….....11

        D.    Plaintiffs are Entitled to Summary Judgment on Their N.Y.
            G.B.L.§ 349 Claim………………………………………………13

         E.    Plaintiffs are Entitled to Summary Judgment on Their Defamation
            Claim………………………………………………………………15

        F.    Plaintiffs are Entitled to Summary Judgment on Damages……...16

    II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE
        DENIED…………………………………………………………………..17

        A.    Defendants Are Not Entitled to Summary Judgment on Plaintiff's
            Lanham Act Claim………………………………………………17

            i.    Defendants' Concede the Advertisements Are Misleading…17

            ii.    At Minimum, An Issue of Fact Exists As to Whether the
            Advertisements Were Likely to Cause Confusion……………….18

        B.    Defendants Are Not Entitled to Summary Judgment on Plaintiffs'
            New York Civil Rights Law Claim……………………………...25

        C.    Defendants Are Not Entitled to Summary Judgment on Plaintiffs'
            New York Deceptive Trade Practices Act Claim………………..25

        D.    Defendants Are Not Entitled to Summary Judgment on Plaintiffs'
            Defamation Claim………………………………………………..27

CONCLUSION ............................................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty, Inc.*,
477 U.S. 242, 256 (1986)............................................................................1

*Arnold v. Treadwell*,
642 F.Supp.2d 723, 734 (E.D. Mich. 2009)............................................8

*Apollo Distrib. Co. v. Apollo Imps., Inc.*,
341 F.Supp. 455, 458 (S.D.N.Y. 1972)................................................22

*Bondar v. LASplash Cosmetics*,
12-cv-1417 (SAS), 2012 WL 6150859,
(S.D.N.Y. Dec. 11, 2012).......................................................................8

*Brinkley v. Casablancas,*
80 A.D.2d 428, 434-35 (1st Dep't 1981).........................................13,25

*British Am. & E. Co. v. Wirth Ltd.,*
592 F.2d 75, 80 (2d Cir. 1979)............................................................24

*Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc,*
10-cv-2333, 2011 WL 1327137,
(S.D.N.Y. Mar. 31, 2011) .......................................................................3

*Burcj v. Mars,*
571 F.Supp.2d 446, 455 (S.D.N.Y. 2008) .............................................2

*Cartier Intern. B.V. v. Ben-Menachem*,
06-cv-3917 (RWS), 2008 WL 64005,
(S.D.N.Y. Jan. 3, 2008).........................................................................22

*Caspar Sleep, Inc. v. Mitcham,*
204 F. Supp. 3d 632, 643-44 (S.D.N.Y. 2016) ....................................14

*Celle v. Filipino Reporter Enterprises, Inc*,
209 F.3d 163, 183 (2d Cir. 2000)..........................................................27

*Condit v. Star Editorial, Inc*,
259 F.Supp.2d 1046 (E.D. Cal. 2003).....................................................8

*Consumer Financial Protection Bureau v. RD Legal Funding, LLC,*

17-cv-890(LAP), 2018 WL 3094916,
(S.D.N.Y. June 21, 2018) ...................................................................................13

*Dalbec v. Gentleman's Companion, Inc.,*
828 F.2d 921, 925 (2d Cir. 1987) .........................................................................15

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,*
604 F.3d 200, 204-05 (2d Cir. 1979) .....................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc..,*
509 U.S. 579,592 (1993) .........................................................................................7

*Diaz v. NBC Universal, Inc.,*
536 F.Supp.2d 337, 342 (S.D.N.Y. 2008),
*aff'd* 337 Fed. Appx. 94 (2d Cir. 2009) ...............................................................15

*Edmondson, et al., v. Velvet Lifestyle, LLC et al,*
15-cv-24442, (S.D. Fla. July 28, 2017).................................................................8

*El Greco Leather Prod. Co. v. Shoe World, Inc.,*
806 F.2d 392, 396 (2d Cir. 1986).........................................................................22

*Fischer v. Forrest,*
286 F.Supp.3d 590, 612 (S.D.N.Y. 2018) .............................................................9

*Gaidon v. Guardian Life Ins. Co. of Am.,*
94 N.Y.2d 330, 333 (1999) ...................................................................................26

*Gallso v. Prudential Residential Servs., Ltd.,*
22 F.3d 1219, 1224 (2d Cir. 1999).........................................................................1

*Genesco Entm't v. Koch,*
593 F.Supp. 743, 752 (S.D.N.Y. 1984).................................................................14

*Gibson v. BTS North, Inc.,*
16-cv-24548, 2018 WL 888872,
(S.D. Fla. Feb. 14, 2018).........................................................................................5

*Gucci America, Inc. v. Action Activewear, Inc.,*
759 F.Supp. 1060, 1065 (S.D.N.Y. 1991) ...........................................................22

*Gucci America, Inc. v. Guess? Inc.,*
831 F.Supp.2d 723, 738 (S.D.N.Y. 2011) .............................................................6

*HICA Educ. Loan Corp. v. Yunatanov*
11-cv-488(SJ)(RER), 2013 WL 3288452

(E.D.N.Y. June 28, 2013) ...........................................................................................1

*Hotchner v. Castillo-Puche,*
    551 F.2d 910, 912 (2d Cir. 1977)...........................................................................27

*Indus., Inc. v. Bacardi & Co.,*
    412 F.3d 373, 384 (2d Cir. 2005)
    (S.D.N.Y. 2005) .......................................................................................................6

*Jackson v. Odenat*
    9 F.Supp. 3d 342, 358 (S.D.N.Y. 2014)................................................................5

*Jordache Enterprises, Inc. v. Levi Strauss & Co.,*
    841 F.Supp. 506, 517 (S.D.N.Y. 1993)..................................................................6

*La Cibeles, Inc. v. Adipar, Ltd.*
    99-cv-4129(AGS) 2000 WL 1253240,
    (S.D.N.Y. 2000) .......................................................................................................6

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.,*
    209 F.Supp.3d 612, 672 (S.D.N.Y. 2016) ..............................................................6

*Matthews v. ABC Television, Inc.,*
    88-cv-6031(SWK), 1989 WL 107640
    (S.D.N.Y. Sept. 11, 1989).......................................................................................25

*Meisel v. Grunberg,*
    651 F.Supp.2d 98, 110 (S.D.N.Y. 2009) ..............................................................23

*New York Times v. Sullivan,*
    376 U.S. 254, 280 (1964).........................................................................................27

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Pharm. Co.,*
    290 F.3d 578, 586-87 (3d Cir. 2002) ....................................................................3,4

*N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C.,*
    266 F.3d 112, 122 (2d Cir. 2001)............................................................................24

*Orlander v. Staples, Inc*
    802 F.3d 289, 300 (2d Cir. 2015)............................................................................14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*
    85 N.Y.2d 20, 26 (1995) ..........................................................................................13

*Pelman ex rel. Pelman v. McDonald's Corp.,*
    396 F.Supp.2d 439, 444 (S.D.N.Y. 2005) ............................................................13

*Pelton v. Rexall Sundown, Inc.,*
   99-cv-4342, 2001 WL 327164 (S.D.N.Y. Apr. 4, 2001) ........................................21

*People by Vacco v. Lipsitz,*
   174 Misc.2d 571, 579 (Sup. Ct. N.Y. Cnty. 1997) ..............................................26

*Procter & Gamble Co. v. Quality King Distrib.,*
   123 F.Supp.2d 108, 113 (EDNY 2000) ...............................................................22

*S.C. Johnson & Son, Inc. v. Clorox Co.,*
   241 F.3d 232, 238 (2d Cir. 2001)..........................................................................22

*Sec. Pac. Mortgage & Real Estate Servs., Inc. v. Herald Ctr., Ltd,*
   891 F.2d 447, 448 (2d Cir. 1989)......................................................................23,24

*Shields v. Gross*,
   58 N.Y.2d 338, 342 (1983) ..................................................................................25

*Sunward Elecs., Inc. v. McDonald,*
   362 F.3d 17, 25 (2d Cir. 2002)..............................................................................22

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
   497 F.3d 144, 158 (2d Cir. 2007)............................................................................3

*Walden v. F.W. Woolworth Co*,
   138 A.D.2d 261 (1st Dep't 1988) ..........................................................................25

## **STATUTES**

Fed.R.Civ.P. 56(e) ..........................................................................................................1

Plaintiffs respectfully submit this Memorandum of Law in Further Support of Their

Motion for Summary Judgment, and in Opposition to Defendants' Motion for Summary

Judgment.[1]

## ARGUMENT

## I. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON EACH COUNT OF THE SAC

### A. Standard Under Rule 56.

When the party moving for summary judgment discharges its burden of proof under Rule

56(c), the burden then falls to the non-moving party to "set forth specific facts showing that there

is a genuine issue for trial." (Fed. R. Civ. P. 56(e). The non-moving party "may not rest upon

mere allegations or denials of his pleading," (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986)), as "the mere existence of some alleged factual dispute between the parties' alone will

not defeat a properly supported motion for summary judgment." *Id.* at 247-48. "Rather, enough

evidence must favor the non-moving party's case such that a jury could return a verdict in its

favor." *HICA Educ. Loan Corp. v. Yunatanov*, 11-cv-488(SJ)(RER), 2013 WL 3288452, at *2

(E.D.N.Y. June 28, 2013)(citing *Anderson*, 477 U.S. at 248); *Gallso v. Prudential Residential

Servs., Ltd.,* 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the

nonmoving party because the evidence to support its case is so slight, there is no genuine issue of

material fact and a grant of summary judgment is proper.").

---

[1] Plaintiffs respectfully incorporate by reference all definitions set forth in their June 1, 2018 Memorandum of Law in Support of their Motion for Summary Judgment (Dkt. 82; "Pls. Mov. Br."), as well as all undisputed facts and definitions set forth in their June 1, 2018 Statement of Undisputed Facts (Dkt. 81; "Pls. SOUF").  As noted, this Memorandum of Law addresses the arguments set forth both in Defendant' Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. 90; "Def. Opp. Br."), and in Defendants' Motion for Summary Judgment (Dkt. 94; "Def. Mov. Br.").  Submitted herewith are Plaintiffs' related filings, including their Memorandum of Law in Opposition to Defendants' *Daubert* motion to exclude Plaintiffs' experts ("Pls. Daubert Opp."), and the declarations of their experts Stephen Chamberlin ("Chamberlin Decl.") and Martin M. Buncher ("Buncher Decl.").

**B.** **Plaintiffs are Entitled to Summary Judgment on Their Lanham Act Claim.**[2]

    **i.** **The Advertisements Make False and Misleading Representations of Fact.**

In seeking to survive summary judgment on Plaintiffs' Lanham Act claim, Defendants first argue that an issue of fact exists because the "advertisements do not make <u>untrue written statements</u>, they simply display image of Plaintiffs, without their names, accompanied by advertising messages about Defendants' gentlemen's club,"(Def. Opp. Br. at 2)(emphasis added), and that the advertisements also do not "state any of the Plaintiffs will be appearing at any of the Clubs … nor that they work there." (*Id.* at 3). These claims are both false, and irrelevant.

*First*: as set forth in Exhibits A-O of the SAC, and further detailed in in Plaintiffs' Moving Brief (at 5-6), Defendants repeatedly wrote certain advertising copy next to Plaintiffs' Images, the intent of which was obviously to create the false impression with potential patrons that if they came to one of the Strip Clubs, they could see Plaintiffs stripping there.[3] There is no other way to reasonably interpret Defendants' advertisements and the copy they included therein, Defendants offer no alternative explanation or interpretation, and thus the lie is put to Defendants' claim they made no written statements about Plaintiffs. Moreover, the fact that the advertisements do not use Plaintiffs' names, or explicitly say, for instance, "Tiffany Toth will be

---

[2] As discussed in Plaintiffs' Moving Brief (at 4-5) to prevail on a false endorsement claim in the Second Circuit a plaintiff must demonstrate the defendant: "(1) made a false or misleading representation of fact; (2) in commerce; (3) in connection with goods and services; (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." *Burck v. Mars*, 571 F.Supp.2d 446, 455 (S.D.N.Y. 2008). Nowhere in Defendants' Opposition do they challenge Plaintiffs' assertion that Defendants used Plaintiffs Images both "in commerce" and "in connection with goods and services," and as such Plaintiffs respectfully submit that Defendants have conceded these Lanham Act factors.

[3] *See, e.g.*, SAC, Ex. M, wherein, beside misappropriated Images of Plaintiff Lina Posada Defendants wrote to potential clientele: "Ask *me* for a dance," clearly making the false statement to potential Flashdancers customers that if they came to Flashdancers, they would be able to ask Ms. Posada for a lap dance.).

stripping at New York Dolls" is of no consequence, as there is no requirement in a false endorsement action that the "false or misleading representation of fact" be explicitly written out, nor is there any requirement that the plaintiff be identified by name. *See, e.g., Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, 10-cv-2333, 2011 WL 1327137, at *4 (S.D.N.Y. Mar. 31, 2011) ("Courts have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product." (quotations omitted)).

*Second*: even if Defendants' complaint that the advertisements contain no "written or explicit messages" (Def. Opp. Br. at 2) was accurate -- and it is not -- the argument is of no moment in light of the "false by necessary implication" doctrine (formally adopted by the Second Circuit in *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007), a case cited by Defendants), which holds that when "the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required." *Id.* (citations omitted). The advertising copy contained in, and beside, the advertisements annexed to the SAC speaks for itself, and the fact that that copy may be (in Defendants' rendering) merely the "type of sexually tinged innuendo one would expect from a gentlemen's club ad," (Def. Opp. Br. 3) does not save them, because that "sexually tinged innuendo" was made by Defendants in reference to eleven women who never consented to appear in the Strip Club's advertisements or be associated with such innuendo, in order to entice and attract patrons to their Strip Clubs. *See Time Warner*, 497 F.3d at 158. ("a district court evaluating whether an advertisement is literally false must analyze the message conveyed in its full context, *i.e.*, it must consider the advertisement in its entirety and not …engage in disputatious dissection.") (quotations and citations omitted); *Novartis Consumer Health, Inc. v.*

*Johnson & Johnson-Merck Pharm. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002) ("A 'literally false' message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." (Internal quotations and citations omitted)).

*Third*: Defendants are in no position to inform this Court that a "reasonable person viewing the ads would not know who Plaintiffs are or assume that they would be the ones engaging in the performances," (Def. Opp. Br. at 3), and their assertion is false in all events, because not only did 92% of the Buncher Survey respondents believe Plaintiffs had agreed to promote the Strip Clubs, and 96% of believe that Plaintiffs had agreed to be in the advertising, but 86% of the Buncher Survey respondents believed that Plaintiffs "might participate in some of the events described in the advertising," *i.e.,* "would be the ones engaging in the performances." (Pls. SOUF, ¶ 93). Despite ample opportunity to do so, Defendants declined to ever conduct a survey of their own (or, if they did conduct one, offer such survey into evidence), Defendants thus have no basis to inform this Court what a "reasonable person viewing the ads" would think or believe, and considering of the dearth of evidence they have produced to counter the Buncher Survey and Report, Defendants' may not create an issue of fact by informing the Court, without basis, what a "reasonable person" might believe.

*Fourth*: nowhere in Defendants' opposition papers do they even argue that the advertisements are not, at minimum, misleading; to the contrary, they concede they are misleading. *See* Def. Opp. Br. at 3 ("If an advertisement is susceptible to more than one interpretation, it is not impliedly false."). Because the first prong of the test for false endorsement is satisfied if a Plaintiff demonstrates that an advertisement is "false *or* misleading" (*Burck*, 571 F.Supp.2d 455) (emphasis added), and Defendants concede the advertisements are

misleading, Plaintiffs have satisfied the "false or misleading" prong of the test for false endorsement.

### ii. Defendants' False and Misleading Advertisements Were Likely to Cause Consumer Confusion Under the *Polaroid* Factors.

Defendants have similarly failed to create a triable issue of fact as to whether their advertisements were likely to cause consumer confusion, and their scattershot *Polaroid*-factor analysis serves only to support Plaintiffs' motion for summary judgment on their false endorsement claim.

### a. *Similarity of Marks*

Defendants' argument that there is "no similarity between the marks" because "a person familiar with Tiffany Toth's image would not be confused when presented with an advertisement" (Def. Opp. Br. at 4) is preposterous in light of their concession that it is, in fact, an Image of Ms. Toth (and all other Plaintiffs) the Strip Club advertisements.[4] The marks at issue in this case -- Plaintiffs' marks, and the mark of Plaintiffs misappropriated and used by Defendants -- are thus not merely similar, they are <u>identical</u>, and this *Polaroid* factor entirely favors Plaintiffs.[5] *See Gibson v. BTS North, Inc*., 16-cv-24548, 2018 WL 888872, at *7 (S.D. Fla. Feb. 14, 2018). ("Because Defendants used the Plaintiffs' actual images in their advertising, the similarity is about as strong as can be.").

### b. *Proximity of the Marks*

As noted in Plaintiffs' Moving Brief (at 10), while the "proximity of the products" factor is often dispensed with in a false endorsement action, and Plaintiffs are not in the same business

---

[4] *See* Defendants' Response to Plaintiffs' Rule 56.1 Statement (Dkt. 93; "Rule 56.1 Response"), ¶¶ 12, 13, 16, 21, 25, 29, 33, 35, 37, 39, 40, 41, 43, 45, 48, 50, 51, 53, 56, 58, 60, 61.

[5] *See Jackson v. Odenat*, 9 F.Supp. 3d 342, 358 (S.D.N.Y. 2014) (finding that similarity of the marks where "[d]efendants do not dispute that they used actual pictures" of plaintiff).

as Defendants, both Plaintiffs and Defendants seek to attract clientele, via the internet -- including on social media, such as Facebook and Instagram -- through the image of a beautiful woman, a point conceded by Defendants. *See* Def. Opp. Br. at 5 ("They are concededly in related fields involving the 'selling' of women's appearances…."). Courts assessing this *Polaroid* factor consider "whether the products serve the same purpose and whether they share similar geographic distribution, market position, and audience appeal." *La Cibeles, Inc. v. Adipar, Ltd.,* 99-cv-4129(AGS) 2000 WL 1253240, at 7 (S.D.N.Y. 2000) (internal quotations and citations omitted). *See also*, *Jordache Enterprises, Inc. v. Levi Strauss & Co.*, 841 F.Supp. 506, 517 (S.D.N.Y. 1993) ("Factors to consider in determining the competitive proximity of the products include appearance, style, function, fashion appeal, advertising orientation and price." (Citations omitted). Given Defendants' concession that Plaintiffs and Defendants compete for the same dollar in similar fields (or, put another way, the "products serve the same purpose" (*La Cibeles, supra*)) the products are in very close proximity, and this factor likewsie weighs heavily in Plaintiffs favor.

### c. *Consumer Confusion*

Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection or identification," (*Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005) (S.D.N.Y. 2005 (quotations and citations omitted)), and it is well-settled under *Polaroid* that "[e]vidence of actual confusion may consist of anecdotal or survey evidence." *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F.Supp.3d 612, 672 (S.D.N.Y. 2016) (citations omitted). *See also, Gucci America, Inc. v. Guess?, Inc.*, 831 F.Supp.2d 723, 738 (S.D.N.Y. 2011) ("Parties to trademark infringement actions frequently use consumer surveys to demonstrate or refute a likelihood of confusion.").

Here, the Buncher Survey demonstrated not only that 96% of the survey respondents thought the Images of Plaintiffs were "important" in attracting attention to the advertising, but that, *inter alia*, 92% of the survey respondents believed Plaintiffs had agreed to promote the Strip Clubs, and 96% of the survey believed that Plaintiffs had agreed to be in the advertising. (SOUF, ¶ 93) (emphasis added). Because these survey results in speak to what respondents believed each Plaintiff consented to, they are of particular significance under *Polaroid*, as it is the settled law of this Circuit that "[t]he public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Star Indus.*, 412 F.3d at 384 (citing *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.3d 200, 204-05 (2d Cir. 1979). Further, though Defendants issue certain criticisms of the Buncher Survey and Report, as set forth in Plaintiffs' *Daubert* Opposition (submitted herewith), none of these criticisms ultimately call into question whether Buncher's methodology is sound and reliable or, whether his Report and testimony will assist the trier of fact in this action. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). As such, and as further detailed forth in Plaintiffs' *Daubert* Opposition, the consumer confusion factor likewise weighs heavily in Plaintiffs' favor.

### d. *Strength of Plaintiffs' Marks*

Ignoring the allegations in the SAC, the thousand-plus of pages of discovery produced in this case, and the sworn statements of each Plaintiff (both at their depositions, and in their declarations submitted in support of summary judgment (Dkt. 80, Exs. B-L)), Defendants argue that Plaintiffs' careers, jobs, magazine covers, social media followers, and the like "do not demonstrate that Plaintiffs are recognized by the persons likely to patronize the Clubs." (Opp. Br. at 7). This tortured argument is unsurprisingly supported by no caselaw, because no such

"recognition"-test exists under the Lanham Act. To the contrary, "[c]ourts specifically addressing the question of whether celebrity status is required to prevail on a Lanham Act false endorsement claim have answered in the negative." *Edmondson, et al., v. Velvet Lifestyle, LLC, et al*, 15-cv-24442, at * 25 (S.D. Fla. July 28, 2017) (citations omitted).[6] Rather, the central inquiry is whether plaintiffs show "an existing intent to commercialize an interest in [their] identit[ies]." *Id.* at 25 (citations omitted). *See also, Condit v. Star Editorial, Inc.*, 259 F.Supp.2d 1046 (E.D. Cal. 2003) ("a majority of circuits require a commercial interest in a mark, that is, at a minimum, a present intent to commercialize a mark," and noting that, to sustain a false endorsement claim, plaintiff must "at least allege an existing intent to commercialize an interest in identity."); *Bondar v. LASplash Cosmetics*, 12-cv-1417 (SAS), 2012 WL 6150859, at * 7 (S.D.N.Y. Dec. 11, 2012) (Lanham Act "does not require celebrity, only a likelihood of consumer confusion …. [and] there is a level of consumer recognition short of celebrity – as the term is usually understood – capable of causing consumer confusion.").

Instructive on this issue is *Arnold v. Treadwell*, 642 F.Supp.2d 723, 734 (E.D. Mich. 2009), where the district court denied defendant's (a digital photography company) Rule 56 motion dismissing plaintiff's false endorsement claim where plaintiff -- there, an <u>aspiring</u> model (unlike Plaintiffs herein, who are <u>established</u> models and actresses) -- introduced evidence showing an <u>intent</u> to commercialize her identity (unlike Plaintiffs here, who have produced evidence demonstrating actual commercialization of their identities). The Court found the evidence of intent to be sufficient, holding that "[t]he Lanham Act itself does not have a requirement that a plaintiff is a celebrity. Instead, as noted by the *Condit* court, it is designed to protect reasonable commercial interests in marks, including identities." A plaintiff's

_____

[6] A true and correct copy of this opinion is annexed as Exhibit A to the August 24, 2018 Declaration of John V. Golaszewski ("Golaszewski Decl.").

commercialization of his mark has likewise recently been found to be dispositive on a "strength

of mark" analysis by the Southern District of New York. *See Fischer v. Forrest*, 286 F.Supp.3d

590, 612 (S.D.N.Y. 2018) (in false endorsement action, holding that the "strength of mark"

factor favored plaintiff where plaintiff "<u>has profitably marketed his product for a number of

years</u>.") (emphasis added).

      Like the plaintiff in *Fischer*, each Plaintiff herein has profitably marketed her "product"

(*i.e.*, herself) for a number of years, Defendants nowhere dispute this, and any such argument

would necessarily fail in light of the documentary evidence concerning the commercialization of

their Images Plaintiffs have produced, including contracts and releases; their tax returns, 1099s,

W-2s, and other evidence showing earnings from modeling and acting; and their deposition and

declaration testimony concerning their careers, earnings, jobs and contracts. Because they have

no legitimate counter to this evidence, Defendants response is that, the above referenced reams

of evidence -- and their own concession that Plaintiffs are "public figures"[7]-- notwithstanding,

Plaintiffs' aren't "famous <u>enough</u>" to assert a false endorsement claim, an assertion which of

course begs the question: what level of fame do Defendants' submit Plaintiffs must reach before

they can sue for false endorsement, and how would one go about quantifying it? While Plaintiffs

accept that that some of them receive higher compensation for modeling and/or acting jobs than

others, or have had longer careers, that not all of them have Tiffany Toth's 5.3 million social

media followers (SOUF, ¶ 9), or Jessa Hinton's 4.5 million followers (*id.*, ¶ 36), that not all of

them have appeared in *Playboy*, like Ms. Toth, Ms. Hinton, Heather Rae Young, Gemma Lee

Farrell, or Carmen Electra, and that none but Ms. Electra has appeared on more than 100

magazine covers, worldwide, such purported indicia of fame (particularly unsuitable for a bright-

---

[7] *See* Def. Opp. Br. at 11.

line test in all events) is not the operative question in a false endorsement action. Rather, the inquiry is whether Plaintiffs intended to commercialize their image, and Defendants nowhere dispute each Plaintiff possesses such an intent, possessed such an intent at the time of misappropriation, and provided evidence to support this intent and practice.

As such, Defendants bald argument that the "mark" of some Plaintiffs is not strong enough for Lanham Act protection will not save them from summary judgment, as the strength of mark factor likewise weighs heavily in Plaintiffs' favor. *See Edmondson*, 15-cv-24442, at *29 ("Because the undisputed evidence establishes that (1) Plaintiffs have a present intent to commercialize their image, and (2) Defendants' use of Plaintiffs' image was confusing to consumers, the Court finds that Plaintiffs are entitled to summary judgment," on their Lanham Act false endorsement claim) (emphasis added).

e. *Bad Faith*

*Fifth*, Defendants used Plaintiffs images to state, suggest or infer to potential patrons of the Strip Clubs that Plaintiffs would either be working as strippers at one or more of the Strip Clubs, or that they endorsed same. Defendants' intention was clearly to capitalize on the looks and/or notoriety of Plaintiffs for the purpose of sowing confusion among the public. *See Star Indus.* 412 F.3d at 388 (2d Cir. 2005) ("Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies products." (Citations omitted)). "Selection of a mark that reflects the product's characteristics, request for a trademark search and reliance on the advice of counsel are factors that support a finding of good faith." *Id.* (citations omitted). Defendants have offered no evidence that they relied on the advice of counsel, or partook in any diligence whatsoever, before they decided to use Plaintiffs' Images in their advertisements; to the

contrary, they have merely blamed (and sued for indemnification and/or contribution) two third-parties on whom they allegedly relied. (Def. Opp. Br. at 8). [8] But even if the Lanham Act was not a strict liability statute (discussed *infra*), because Defendants were at all times aware that: 1) they had no contract with any Plaintiff; 2) no Plaintiff was ever affiliated with or employed by any Defendant or their Strip Clubs, and; 3) no Defendant or Strip Club had any release or license which would give Defendants the authority to publish Plaintiffs' Images for commercial, or any other, purpose, (SOUF, ¶¶ 69, 76), Defendants' willful blindness will not save them from a finding of bad faith. *See Star Indus.*, 412 F.3d at 389 ("Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark.") This *Polaroid* factor likewise weighs heavily in Plaintiffs' favor.[9]

As such, because Defendants' have conceded that the advertisements were at minimum misleading, and because each of the *Polaroid* factors weighs heavily in Plaintiffs' favor, for the reasons set forth herein, as well as in Plaintiffs' Moving Brief, summary judgment should be granted in Plaintiffs' favor on their Lanham Act claim.

### C. Plaintiffs are Entitled to Summary Judgment on Their N.Y. Civil Rights Law §§ 50-51 Claim.

Defendants seek to overcome the incontrovertible evidence that no Plaintiff ever consented -- in writing (as mandated by N.Y. Civil Rights Law § 51), or otherwise -- to Defendants use of her Image as follows:

> Although it is true that Plaintiffs did not give specific consent to the use of their Images by Defendants, they all consented because they executed broad releases every time they did a professional photo shoot.

---

[8] *See* Dkt.25, Defendants' Third-Party Complaint against Internet Management Corp. and Melange Media Group, LLC.

[9] Nowhere in their Opposition Brief do Defendants address Plaintiffs' "consumer sophistication" argument (Pl. Mov. Br. at 13) as a factor under the *Polaroid* test, and as such this Court should deem this factor conceded by Defendants, and find that it favors Plaintiffs.

(Def. Opp. Br. at 8). *First*, the only legally relevant portion of the above-statement is Defendants' concession that no Plaintiff consented in writing to Defendants use of her image, this concession necessarily dispenses with any other argument relating to Plaintiffs' New York Civil Rights Law claim, and mandates that summary judgment be granted in Plaintiffs' favor on same.

*Second,* Defendants' statement that all Plaintiffs consented to Defendants use of their Images "because they executed broad releases every time they did a professional photo shoot," is supported by no evidence, is absolutely false and begs the question: are Defendants actually arguing that, because, for instance, Carmen Electra signed a release allowing *Loaded* Magazine to use the Image of her set forth at Exhibit O to the SAC, that New York Dolls is <u>also</u> allowed to use that Image?  Defendants have of course offered no authority to support this incredible proposition, which would effectively eviscerate the law of contract and declare open season on every image, of every model and actress, in the world.

*Third*, even if Plaintiffs did "execute broad releases every time they did a professional photo shoot," that is immaterial to whether they consented to <u>Defendants</u> use of their Images, or whether <u>Defendants</u> had the legal right to use same.  As Plaintiffs' specifically noted in their Moving Brief (at fn. 4), any attempt by Defendants to rely on Plaintiffs' decision to allow <u>other</u> businesses, entities or individuals to use the Images at issue in this litigation must be rejected, as it finds no support under New York law. [10] Afforded the opportunity to respond this argument, Defendants are silent, and as such summary judgment on each Plaintiffs' New York Civil Rights Law claim is warranted.

_____

[10] *See Brinkley v. Casablancas*, 80 A.D.2d 428, 434-35 (1st Dep't 1981) (that plaintiff "may have voluntarily on occasion surrendered her privacy, for a price or gratuitously, does not forever forfeit for anyone's commercial profit so much of her privacy as she has not relinquished." (Citations omitted).

### D.  **Plaintiffs Are Entitled to Summary Judgment on their N.Y. G.B.L. § 349 Claim.**

"To state a claim for deceptive practices under section 349, a plaintiff must show: (1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice, or advertisements was misleading in a material respect; and (3) that the plaintiff was injured as a result of the deceptive act, practice or advertisement." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.Supp.2d 439, 444 (S.D.N.Y. 2005).  Rather than attempt to demonstrate that the advertisements were <u>not</u> consumer oriented, or <u>not</u> misleading, or that Plaintiffs were <u>not</u> injured, Defendants assert, alternatively, that "Plaintiffs cannot show injury to consumers" and that Plaintiffs cannot demonstrate "harm to the public health or safety."  (Opp. Br. at 9.)  It is frankly unclear what these assertions have to do with Plaintiffs' section 349 claim.

*First*, there is no dispute that the advertisements are consumer-oriented, because the advertisements were directed at all potential Strip Club patrons who visited the Strip Club's websites and/or social media sites. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (holding conduct to be "consumer-oriented" where defendant Bank interacted with plaintiffs' representative the same as any other customer opening a savings account.); *Consumer Financial Protection Bureau v. RD Legal Funding, LLC*, 17-cv-890(LAP), 2018 WL 3094916, at *33 (S.D.N.Y. June 21, 2018) ("Defendants' conduct was 'consumer-oriented' in that Defendants made similar statements and representations to all of the consumers targeted."); *Genesco Entm't v. Koch*, 593 F.Supp. 743, 752 (S.D.N.Y. 1984) (finding that conduct was "consumer-oriented" because it was "not unique" to the plaintiffs, was not "private in nature" and not a "single-shot transaction.").

*Second*, any attempt by Defendants to read a "public health and safety" element into Section 349 must be rejected inasmuch as it "lacks a basis in governing New York law." *Caspar*

*Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 643-44 (S.D.N.Y. 2016) (Rakoff, J.) (noting that *Oswego Laborers*' "case was brought against a bank by two pension funds alleging that the bank did not adequately disclose upon plaintiffs' opening of savings account that interest would not be paid on deposits in excess of $100,000," and that there "there was no monumental public interest at stake let a alone a threat to public health or safety," at issue in that case.). Rather, the central question under section 349, and the focus of the Court of Appeals' seminal decision in *Oswego Laborers*, was "not on the magnitude of the public interest at stake or the identity of the claimant, but rather on whether the complained-of acts represented a one-off, 'single-shot transaction,' on the one hand, or a way of doing business, on the other." *Caspar*, 204 F.Supp.3d at 644.  Because Defendants' advertising practices and use of misappropriated images were part and parcel of their "way of doing business," and not a single-shot transaction, Defendants' conduct is thus consumer-oriented under New York law.

*Third*, and as to the second prong of the test under section 349, Defendants nowhere address Plaintiffs' assertion that their advertisements were "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Plaintiffs have produced evidence via the Buncher Report that the advertisements were likely to mislead a reasonable consumer insofar as, *inter alia*, 92% of the male, over 21 survey respondents, each of whom had attended a gentlemen's club in the past 2 years, felt Plaintiffs had agreed to promote the Strip Clubs, and 96% of that survey believed that Plaintiffs had agreed to be in the advertising.  (SOUF, ¶ 93).  Since Defendants provided no consumer confusion survey of their own to refute Buncher's findings, and nowhere provided any evidence that these advertisements were <u>not</u> likely to mislead a reasonable consumer, summary judgment is appropriate on Plaintiffs' section 349 claim as well.

E.     **Plaintiffs Are Entitled to Summary Judgment on Their Defamation Claim**

Defendants have made representations as to each Plaintiff's affiliation and/or sponsorship

of the Strip Club, and each of these representations are false because no Plaintiff ever worked as

a stripper at any of the Strip Clubs or agreed to endorse same by appearing in their

advertisements. (SOUF, ¶ ¶ 5-7). In opposition, Defendants claim that they made no "false

statements" because they did

> not state that Plaintiffs were appearing at the Clubs, as they did not identify
> Plaintiffs at all or state expressly that the unidentified women would be appearing.

(Def. Opp. Br. at 10).  Defendants are thus apparently of the position that, because they did not

explicitly state, *i.e.* Tiffany Toth would be stripping at the New York Dolls, but instead merely

misappropriated a picture of Ms. Toth, and then wrote on their advertisement picture: "Who

needs to leave anything to the imagination when the _reality_ is even better?" (SOUF, ¶ 13, and

SAC Ex. A) (emphasis added), that they are thus inoculated from liability under the law of

defamation. But this is inaccurate, because although a representation will not be defamatory

unless it is "of and concerning" the plaintiff (*Dalbec v. Gentleman's Companion, Inc.*, 828  F.2d

921, 925 (2d Cir. 1987) (citation omitted)), and that this inquiry "generally presents a factual

question for the jury," (*Diaz v. NBC Universal, Inc.*, 536 F.Supp.2d 337, 342 (S.D.N.Y. 2008),

*aff'd* 337 Fed. Appx. 94 (2d Cir. 2009), Defendants have conceded that each of the

advertisements at issue in this lawsuit in fact contains Images of Plaintiffs.[11] As such, that

Defendants did not identify Plaintiffs by name, and only alluded to or inferred (as opposed to

explicitly stating) that they would stripping at their Strip Clubs does not matter, and does not

mean that the advertisements are not "of and concerning" Plaintiffs.  Further, Defendants'

---

[11] *See* Rule 56.1 Response, ¶¶ 12, 13, 16, 21, 25, 29, 33, 35, 37, 39, 40, 41, 43, 45, 48, 50, 51, 53, 56, 58, 60, 61.

opposition is tellingly silent concerning Plaintiffs' defamation *per se* claim, and with good

reason: even the modeling industry veteran hired by Defendants to attempt to rebut the

Chamberlin Report agreed that imputing that a model is a stripper would tend to "damage, harm

and devalue" the model's career, (SOUF, ¶ 102), and could serve as a deterrent to commercial

brands, who would not want to be associated with her. (*Id.*, ¶ 101). It is also undisputed, and

was also agreed to by Defendants' rebuttal witness, that no legitimate agent or agency would

ever book a model of the caliber of the Plaintiffs herein to appear in a strip club advertisement.

(*Id.*, ¶ 103). Thus, because damages are presumed under a claim for defamation *per se*, and even

if they were not, Plaintiffs have suffered actual damages by being deprived of compensation by

Defendants at fair market value, (*id.*, ¶¶ 96-98), summary judgment in Plaintiffs' favor on the

defamation claim is also appropriate.

**F.     Plaintiffs Are Entitled to Summary Judgment on Damages**

Plaintiffs have proffered evidence of a retrospective fair market valuation of the

unauthorized and illicit use of their Images. (*id.*, ¶ 96, and the Chamberlin Report referenced

therein). The valuation set forth in the Chamberlin Report was expressly adopted by each

Plaintiff, is reasonable, undisputed, and should be awarded on summary judgment. (*id.*, ¶ 98).

In response, Defendants inform the Court that Chamberlin "made up the [fair market

value] numbers utilized and has no factual basis for his opinions." (Def. Opp. Br. at 12).

Defendants make this assertion despite the fact that their own purported expert testified at his

deposition that 1) all of the factors Chamberlin stated a reputable agent would rely on when

negotiating a modeling contract, and which Chamberlin himself relied on in formulating

valuations in the Chamberlin Report, were accurate; (SOUF, ¶ 104); 2) all of the different and

separate usages that Chamberlin set forth in the Chamberlin Report were in fact the different

usages a modeling agent would consider when negotiating a contract; (*id.*, ¶ 105); 3) Defendants' rebuttal witness <u>never</u>, in his career, had even attempted the type of retrospective fair market analysis set forth in the Chamberlin Report (*id.*, ¶ 106); and 4) Defendants' rebuttal witness wholeheartedly endorsed and agreed with the valuation methodology Chamberlin applied in retrospectively valuing Plaintiffs' Images. (*Id.*, ¶ 107).

Plaintiffs' arguments in opposition to Defendants' *Daubert* motion to exclude Chamberlin are submitted contemporaneously with this Memorandum. Should the Court that deny Defendants' *Daubert* motion as to Chamberlin, as Plaintiffs' respectfully submit it should, we note that Defendants have neglected to offer any other arguments in opposition to Plaintiffs' summary judgment motion on damages.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

For all the reasons this Court should grant Plaintiffs' motion for summary judgment, Defendants' convoluted and transparent motion for summary judgment, which amounts to nothing more than an attempt to flood the record in the hope the Court will assume a triable issue of fact must exist somewhere in its filings, must be denied.

### A. <u>Defendants Are Not Entitled to Summary Judgment on Plaintiffs' Lanham Act Claim.</u>

#### i. Defendants' Concede the Advertisements Are Misleading.

Even if this Court cannot conclude, as matter of law, that the advertisements are literally false, false by implication, or misleading, to achieve summary judgment on this claim, Defendants would have to demonstrate to the Court that no reasonable juror could reasonably find that the advertisements were misleading. As noted *supra*, Defendants do not even attempt

such a showing, and concede that the advertisements are misleading.[12] Further, and related, Plaintiffs confess confusion as to what Defendants' reliance on seven (out of 300) cherry-picked responses from the Buncher Survey is meant to prove, but here again they confuse the standard under Rule 56: though themselves moving for summary judgment, Defendants inform the Court that the "advertisements are susceptible to more than one interpretation." (Def. Mov. Br. at 9). Defendants' concession that there is an issue of fact whether the advertisements are false or misleading necessarily means that their summary judgment motion must fail.

### ii. At Minimum, An Issue of Fact Exists As to Whether the Advertisements Were Likely to Cause Confusion.

Although Defendants concession that the advertisements may be false or misleading means that as a matter of law they are not entitled to summary judgment on Plaintiffs' false endorsement claim, Plaintiffs address below those *Polaroid*-factors arguments offered for the first time in Defendants' own moving brief:

*As to Strength of Mark:*

Defendants submit that the "question presented here is whether Plaintiffs themselves are well-known enough models and actresses so that a member of the public would recognize their image." (Def. Mov. Br. at 10). The answer to this question is contained in the evidence Plaintiffs have produced in this action and offered in support of their summary judgment motion: as detailed in their accompanying Rule 56.1 Statement, Plaintiffs' collectively have tens of millions of social media followers, have appeared on the covers of dozens of magazines, have appeared in campaigns for major brands and companies, and have achieved celebrity status and fame in the

---

[12] *See* Def. Opp. Br. at 3 ("If an advertisement is susceptible to more than one interpretation, it is not impliedly false.").

modeling industry.[13] It is this renown in the modeling industry that allows Plaintiffs to continue booking jobs, and as set forth in Plaintiffs' Rule 56.1 Statement and each Plaintiffs' declaration, each of the Plaintiffs have modeled for companies and in magazines -- including *Playboy* (for whom six (6) of the Plaintiffs have modeled), *Maxim, FHM, Esquire*, Hustler Lingerie, and many others -- which are directed at the exact demographic to which Defendants' cater.[14] In light of this, Defendants assertion that "there is no evidence that the model's images are recognized by the consuming public," (Mov. Br. at 11) is ridiculous; millions of members of the "consuming public" recognize Plaintiffs, follow them on social media, and purchase the magazines in which they appear and the goods for which they advertise.

Moreover, Defendants' argument that "many of the Plaintiffs had only brief modeling careers and earned modest income at best," (Def. Mov. Br. at 11), is not only roundly contradicted by the evidence in the record, but even if true, would not be the end of the inquiry in light of the fact that, as discussed *infra*, "celebrity" is not the touchstone of a false endorsement claim; rather, a plaintiff's intention to commercialize her image is. *See, supra,* Section I(B)(ii)(d). As such, and as noted *supra*, any evaluation of the strength of mark factor weighs heavily in Plaintiffs' favor.

### *As to Competitive Proximity of the Products:*

As they did in their Opposition Brief, Defendants concede in their Moving Brief that the commercial activities of the parties "are arguably related." (Def. Mov. Br. at 12). Thus, if the Court was to consider this factor, it would likewise weigh heavily Plaintiffs' favor.

---

[13] SOUF ¶¶ 3, 9, 15, 20, 24, 28, 32, 36, 42, 47, 52, 57.

[14] *See Jackson*, 9 F.Supp. 3d at 356 (noting that in a false endorsement case, "the 'strength of the mark' refers to the level of recognition that the plaintiff has among the consumers to whom the advertisements are directed." (Citations omitted)).

*As to Similarity of the Marks*:

Defendants' representation to the Court that, in false endorsement actions, "similarity of the marks should be inapplicable," (Def. Mov. Br. at 10) is false, supported by no authority, contradicted by the relevant authority (*see Jackson*, 9 F.Supp.3d at 356), and Defendants' attempt to dispense with a *Polaroid* factor which obviously and completely weighs in Plaintiffs' favor should be rejected by the Court.

*As to Consumer Confusion*:

In support of their argument on consumer confusion, Defendants make the startling assertion that Lanham Act claims were dismissed in two cases litigated by Plaintiffs' firm wherein "plaintiffs relied on Dr. Buncher, whose opinions were assigned little weight in assessing the evidence of actual consumer confusion." (Def. Mov. Br. at 13-14). What Defendants tellingly neglect to inform the Court is that in neither of those cases did Buncher conduct a Survey or issue a Report, and thus no Survey or Report was entered into evidence or considered by the Court. Rather, Buncher merely prepared a Declaration that underline(discussed studies he had done in past cases.) As Defendants are no doubt aware, those decisions have underline(zero) substantive bearing on Buncher's methodology, his consumer confusion results, or the Survey and Report in evidence in this action, and their transparent attempt to compare the instant action, where Buncher has conducted an actual Survey and issued a Report based on Defendants' own marketing evidence and advertising, to cases wherein the district court had no Survey or Report to consider, speaks for itself and ultimately gets them nowhere.[15]

Further, Defendants' reliance on *Pelton v. Rexall Sundown, Inc.*, 99-cv-4342, 2001 WL 327164 (S.D.N.Y. Apr. 4, 2001) and *Ji v. Bose*, 538 F.Supp.2d 349, 353 (D. Mass. 2008)

---

[15] Plaintiffs' discussion and analysis of Defendants' *Daubert* motion to exclude the Buncher Survey and Report is set forth in their accompanying *Daubert* Opposition.

concerning consumer confusion is likewise inapposite because in neither case did the plaintiff produce any evidence that they were recognizable. *See, e.g., Ji*, 538 F.Supp.3d at 353 (plaintiff had "provided no direct evidence that she enjoys any fame whatsoever.").  In contrast, Plaintiffs here have produced evidence relating, *inter alia*, to their millions of social media followers, the magazines in which they have appeared, and the brands for which they have modeled. Further, unlike in *Pelton* (a seventeen year old district court case which has <u>never</u> been relied on for the proposition Defendants urge) where the plaintiff's face was partially covered on a diet pill box, and no writing referenced her, Defendants made Plaintiffs the central components of the advertisements at issue in this case, and specifically referenced them in their copy. Finally, and unlike here, in neither *Pelton* nor *Ji* did plaintiff provide a consumer confusion survey, and thus those courts were unable to rely on any evidence of likelihood of confusion, unlike here, where the Buncher Survey and Report establishes confusion.

<u>As to Bad Faith:</u>

Defendants next argue that, while it may be true that they had no right to use Plaintiffs' Images, they <u>thought</u> they did, because (the theory goes) they were allegedly told by some third-parties that those third-parties had the right. Though Plaintiffs take no position on the viability of Defendants' third-party action for indemnification and contribution against these third-parties, a few points are apparently lost on Defendants:

*First*: the Lanham Act prohibits, *inter alia*, a defendant from making "false or misleading descriptions of fact in connection with any goods in commerce that are likely to cause confusion or that misrepresent the nature, characteristics, qualities, or geographic origin of the goods."[16] It is a strict liability statute, with no intent requirement.  *See Procter & Gamble Co. v. Quality King*

---

[16] *S.C. Johnson & Son, Inc. v. Clorox Co*, 241 F.3d 232, 238 (2d Cir. 2001).

*Distrib.*, 123 F.Supp.2d 108, 113 (EDNY 2000) ("the registrant need not prove intent in order to succeed on the issue of liability," under the Lanham Act."); *Cartier Intern. B.V. v. Ben-Menachem*, 06-cv-3917 (RWS), 2008 WL 64005, *12 (S.D.N.Y. Jan. 3, 2008) (granting summary judgment for plaintiff and holding that "[s]ince a seller bears strict liability for violations of the Lanham Act, even an 'innocent' individual who sells goods bearing an infringing mark is liable for trademark infringement -  intent is not required."); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2002) ("It is well-established that wrongful intent is not a prerequisite to an action for trademark infringement or unfair competition, and that good faith is no defense." (quoting *Gucci America, Inc. v. Action Activewear, Inc.* 759 F.Supp. 1060, 1065 (S.D.N.Y. 1991) (citations omitted)); *Apollo Distrib. Co. v. Apollo Imps., Inc.*, 341 F.Supp. 455, 458 (S.D.N.Y. 1972) ("under the [Lanham Act], no intent to deceive … need be shown[.] It is sufficient that the public may be deceived."); *El Greco Leather Prod. Co. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986) (defendants' "claimed lack of knowledge of its supplier's infringement, even if true, provides no defense" to a Lanham Act claim).   Thus, assuming *arguendo* that Defendants were told and believed that the third-party defendants had the right to use Plaintiffs' Images, it ultimately does not matter for purposes of Defendants' Lanham Act liability.

*Second*: as made clear by the deposition testimony of Defendants' principal, Barry Lipsitz ("Lipsitz"), and employee, Barry Lipsitz, Jr. ("Lipsitz, Jr."), Defendants effectively gave third-party defendant Internet Management Corp. ("IMC") complete authority, with no oversight, to post images on their websites, and did so without ever asking for or receiving any evidence IMC had the right to any of the Images it posted. (SOUF, ¶¶ 74-86). As Lipsitz, Jr. testified, not only did IMC "had full administrative capabilities; they posted everything," but

IMC would usually post advertisements without getting prior approval from Defendants, who, having relied on IMC for approximately 20 years, Defendants' trusted. (SOUF, ¶¶ 85-86). Though Lipzitz Jr. testified that he would occasionally provide copy for the advertisements (SOUF, ¶ 84)[17], he also testified concerning IMC that:

> Usually they would just post without saying anything. Usually if there is some sort of party coming up, they would just put the words, verbiage together and put it on the site. I could have approved it but I really don't know. Usually it was up to them.

(SOUF, ¶ 85). Defendants recalled no occasion in which they instructed IMC to remove or change an image or advertisement, testified that they were on a "faith basis" with IMC, and had no contract with IMC. (SOUF, ¶¶ 88, 73). For IMC's part, it was unable to locate <u>any</u> releases it had from any company granting IMC the right to any images at issue in this litigation, and though it's principal testified that all images at issue in this lawsuit, except that of Carmen Electra, came from IMC, he also testified that he "<u>couldn't put a lot of weight in that though because some of these images I don't recognize. I would have no idea</u>." (SOUF, ¶ 91) (emphasis added).

In light of this testimony, Plaintiffs note that under New York law, "both the agent and principal are liable for tortious acts committed by the agent within the scope of its agency." *Meisel v. Grunberg*, 651 F.Supp.2d 98, 110 (S.D.N.Y. 2009). *See also Sec. Pac. Mortgage & Real Estate Servs., Inc. v. Herald Ctr., Ltd.*, 891 F.2d 447, 448 (2d Cir. 1989) (per curiam) (stating that it is an "established rule of agency law that a principal is liable to third parties for the acts of an agent operating within the scope of the agent's real or apparent authority.") (citations omitted); *British Am. & E. Co. v. Wirth Ltd.*, 592 F.2d 75, 80 (2d Cir. 1979) (stating

---

[17] As set forth at Exhibit B to the Golaszewski Decl., Lipsitz Jr. also was clearly involved in the choosing of images and drafting of advertising copy that was included on the Strip Club's social media and/or website advertisements.

that agent serves under control and supervision of principal, and so long as agent acts within the scope of his authority, he binds the principal); 2A N.Y. Jur.2d Agency & Indep. Contractors § 290 ("a principal is liable for the fraudulent acts of his or her agent committed within the scope of the agent's authority."); *Id.*, § 291 ("[L]iability for an agent's fraud or misrepresentation applies even where the principal had no knowledge of the misrepresentation or fraud and intended no fraud."). It is equally well-settled that "an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act," (*N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C.*, 266 F.3d 112, 122 (2d Cir. 2001) (citation omitted)), and considering the deposition testimony in the record -- as well the declarations of Lipsitz, Lipsitz, Jr. and IMC's principal, Paul Brown submitted by <u>Defendants</u> in support of their own motion for summary judgment -- there can be no question that an agency relationship existed between Defendants and IMC.

Thus, even if the Lanham Act was not a strict liability statute, and accepting as true Defendants contention concerning IMC's control over the Strip Club's advertising, Defendants are nevertheless liable for the misappropriations of their agent, IMC, and IMC's publications -- on Defendants' websites and social media sites -- of Plaintiffs' Images, and Defendants may not escape a finding of bad faith by merely averring that it was their agent's fault. This *Polaroid* factor likewise weighs heavily in Plaintiffs' favor.

For the reasons set forth herein, even if this Court is not inclined to grant summary judgment in Plaintiffs' favor on their Lanham Act claim, there clearly exists numerous issues of disputed facts which preclude a summary judgment finding in Defendants' favor.

**B.** **Defendants Are Not Entitled to Summary Judgment on Plaintiffs' New York Civil Rights Law Claim.**

Defendants' entire argument in support of summary judgment on Plaintiffs' Civil Rights Law claim is that "Plaintiffs gave up any rights for the future usages of their images." (Mov. Br. at 19). How Plaintiffs purported to do this, both Plaintiffs and the Court are left to guess, and Defendants attempt to rely on releases Plaintiffs executed in favor of other counterparties gets them nowhere. *See Brinkley v. Casablancas*, 80 A.D.2d 428, 434-35 (1st Dep't 1981), *supra*, n.11.

Defendants' reliance on cases where releases have been executed in <u>defendants</u> favor are likewise inapposite because Defendants concede they never contracted with any Plaintiff or are in possession of any release granting them the right to Plaintiffs' Images. *See, e.g. Shields v. Gross*, 58 N.Y.2d 338, 342 (1983) (release executed in the <u>defendant's</u> favor);*Matthews v. ABC Television, Inc.* 88-cv-6031(SWK), 1989 WL 107640, at *6 (S.D.N.Y. Sept. 11, 1989), (plaintiff granted consent to <u>defendant</u> to use his image "in any manner with regard to the project.").[18] These cases support summary judgment in Plaintiffs' favor.

**C.** **Defendants Are Not Entitled to Summary Judgment on Plaintiffs' New York Deceptive Trade Practices Act Claim.**

As noted *supra,* Section I.D, Defendants' argument that Plaintiffs must show harm to the "public health and safety" to prevail on their section 349 claim is contradicted by relevant authority, as is Defendants' assertion Plaintiffs must establish intent to deceive, a claim directly contradicted by the seminal section 349 case in New York. *See Oswego Laborers*, 85 N.Y.2d at

---

[18] Defendants reliance on *Walden v. F.W. Woolworth Co.*, 138 A.D.2d 261 (1st Dep't 1988) is puzzling because Appellate Division in that case affirmed plaintiff's motion for summary judgment on liability and injunctive relief on plaintiff's section 51 claim "since defendants were unable to offer a meritorious defense to the unauthorized marketing of plaintiff's photograph on packages, or hang tags attached to articles, of clothing manufactured, distributed or sold by them. They argued verbal consent, clearing unavailing under the statute…").

26 ("Although it is not necessary under the statute to establish defendant's intent to defraud or mislead, proof of scienter permits the court to treble the damages up to $1,000 (General Business Law § 349(h)).  Defendants' assertion that the section 349 claim should be dismissed because Plaintiffs cannot prove "actual consumer harm," (Def. Mov. Br. at 22) seeks to improperly read an additional element into the statute, which mandates only that Plaintiffs demonstrated that Defendants advertisements would mislead a reasonable consumer, and that Plaintiffs were injured, the latter of which Plaintiffs have demonstrated through the Chamberlin Report.  Finally, Defendants' argument that the section 349 claim is preempted by the Lanham Act claim is incorrect, and no case in New York has <u>ever</u> held that a false endorsement claim under the Lanham Act preempts a Section 349 claim, Defendants cite no authority to support any such interpretation of Section 349, and because the deception in which Defendants' engaged was consumer-oriented, Plaintiffs have stated a valid claim under Section 349.  *See Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 333 (1999) (finding that plaintiffs had alleged "consumer oriented" practice where, "[i]n contrast to a private contract dispute … the practice before us involved an extensive marketing scheme that had a 'broader impact on consumers at large.'" *(quoting Oswego Laborers,* 85 N.Y.2d at 25); *People by Vacco v. Lipsitz*, 174 Misc.2d 571, 579 (Sup. Ct. N.Y. Cnty. 1997) (noting, in false advertising action, that "[a] business practice of failing to deliver as promised is recognized as fraudulent and illegal conduct violating and illegal conduct violating General Business Law § 349." (Citations omitted)).

As such, Defendants motion for summary judgment on the section 349 claim fails as well.

**D.    Defendants are Not Entitled to Summary Judgment on Plaintiffs'
Defamation Claim**

Defendants argument that they made "no false statements about Plaintiffs" is addressed *supra* and does not withstand scrutiny in light of Defendants' concession that the Images in the offending advertisements are of Plaintiffs.  "Malice" for purposes of defamation requires that the "publisher had a subjective awareness of either falsity or probably falsity of the defamatory statement, or acted with reckless disregard of its truth or falsity." *Celle v. Filipino Reporter Enterprises, Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (citing *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)); *Hotchner v. Castillo-Puche*, 551 F.2d 910, 912 (2d Cir. 1977) ("knowledge of falsity or with reckless disregard for the truth.").  As noted, Defendants were always aware: 1) they had no contract with any Plaintiff; 2) no Plaintiff was ever affiliated with or employed by any Defendant or their Strip Clubs, and; 3) no Defendant or Strip Club had any release or license which would give Defendants the authority to publish Plaintiffs' Images for commercial, or any other, purpose.  (SOUF, ¶¶ 69, 76).  Moreover, Defendants never asked their agent entrusted with creating and maintaining their websites whether they had the right to the Images in the advertisements, never saw any evidence that it had such rights, and, when pressed for information relating to IMC's alleged right to the Images, IMC testified that, although he thought IMC had such rights, IMC "couldn't put a lot of weight in that though because some of these images I don't recognize.  I would have no idea." (SOUF, ¶ 91).

Plaintiffs maintain that this is the epitome of recklessness as pertains to the falsity of the representations made, and that, at minimum, an issue of fact exists concerning said recklessness precluding summary judgment in Defendants' favor.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' Moving Brief and related *Daubert* Opposition, Plaintiffs' respectfully request that: 1) this Court grant their motion for summary judgment on each count of the SAC; 2) deny Defendants' motion for summary judgment on each count of the SAC; 3) issue an award of compensatory damages in Plaintiffs favor and against Defendants in the amount set forth in the Chamberlin report, plus all costs and attorneys' fees incurred by Plaintiffs in this action; and, 4) grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
      August 24, 2018

                                **THE CASAS LAW FIRM, P.C.**

                                By: /s/ John V. Golaszewski
                                    John V. Golaszewski, Esq.
                                    1745 Broadway, 17th Floor
                                    New York, New York
                                    T: 646.872.3178
                                    F: 855.220.9626

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on this 24th day of August, 2018, the foregoing was electronically filed with the U.S. District Court Clerk, Southern District of New York, by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

<u>/s/ John V. Golaszewski</u>

John V. Golaszewski, Esq.
Casas Law Firm, P.C.
1745 Broadway, 17th Floor
New York, New York 10019
Tel: (646) 872-3178
john@casaslawfirm.com